922 F.2d 835
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charlene B. COBBINS, Plaintiff-Appellant,
v.
SCHOOL BOARD OF THE CITY OF LYNCHBURG, VIRGINIA, as
represented by, George F. Boatright, Patricia M. Bower,
Joseph H. Callicott, Jr., Rodger W. Fauber, Junius A.
Haskins, Yvonne Ferguson, William G. Long, Mosby G. Perrow,
Ocie Mack, Members of the School Board, Joseph A. Spagnolo,
Jr., Superintendent of Schools, Ruben O. Womack, Principal
Bedford Hills Elementary School, Defendants-Appellees.
 No. 90-1754.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1990.
Decided Jan. 14, 1991.
As Amended Jan. 23, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Jackson L. Kiser, District Judge. (CA-89-68-L)
 Robert Paul Dwoskin, Charlottesville, Va., for appellant.
 H. Aubrey Ford III, Browder & Russell, P.C., Richmond, Va., for appellees.
 W.D.Va.
 AFFIRMED.
 Before SPROUSE and CHAPMAN, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 This is an appeal of the district court's decision granting summary judgment in favor of defendants-appellees in this action for racial and sexual discrimination. The district court below held that the evidence presented by the appellant failed to establish a prima facie case of either racial or sexual discrimination and, accordingly, granted summary judgment in favor of defendants. We affirm.
 
 BACKGROUND
 
 2
 Charlene Cobbins was a teacher at Bedford Hills Elementary School in Lynchburg, Virginia, from 1972 until 1986. While arguing with two other teachers at the school September 4, 1986, Cobbins--with a particular statement--offended one of the others with whom she was engaged. This teacher reported the comment to the school's principal, Reuben Womack. The three teachers met with Womack and agreed that Cobbins had made the statement. Afterward, Womack met with Cobbins alone. In affidavits filed with the district court, the parties disagree regarding what occurred during the course of this meeting.
 
 
 3
 According to Womack, he informed Cobbins that he was required to report the incident to the school system's personnel. Cobbins, states Womack, became hostile and violent, and proceeded to strike and scratch him, pushing him against a wall when he attempted to flee. Cobbins's version of the event differs markedly. Cobbins states that in the course of their meeting, she threatened to retain a lawyer and to file harassment charges against Womack and the school. In turn, Cobbins states, Womack arose from his desk with "an angry look," grabbed Cobbins, struck her in the face, and threw her against the wall where she fell to the ground.
 
 
 4
 Cobbins argues that this purported attack was the culmination of a series of incidents, including sexual advances and disparate treatment, that amounted to a continuing pattern of sexual and racial harassment, and which had created a hostile work environment at the Bedford Hills Elementary School. As evidence of this scheme, however, Cobbins states only that Womack once had asked her out "for a glass of wine" and at times had reprimanded her for refusing to perform certain tasks that she perceived as secretarial.
 
 
 5
 A three-person team from school administration--led by School Superintendent Joseph A. Spagnola, Jr.--investigated the altercation in the principal's office and concluded that Womack's version of the events was true. Pursuant to state employment regulations, Cobbins chose to have a fact-finding panel hear the case. This panel also concluded that Womack's version of the event was accurate and recommended that the school dismiss Cobbins. The School Board, which then considered the evidence and recommendation, voted six-to-two to dismiss her. Cobbins filed and pursued her action with the Equal Employment Opportunity Commission ("EEOC"), which rejected the claim, and she timely filed this action in the United States District Court for the Western District of Virginia.
 
 
 6
 On April 5, 1990, the district court granted summary judgment in favor of defendants on all of Cobbins's claims. The district court reasoned that, in light of the evidence that Cobbins had presented in opposition to defendants' motion for summary judgment, her claim for racial harassment amounted to mere speculation. Upon the same proof offered, the district court also concluded that summary judgment in favor of the defendants on the sex discrimination claim was appropriate because Cobbins had failed to sufficiently display that the complained of conduct occurred due to her gender.
 
 DISCUSSION
 
 7
 Appellant Cobbins argues that the district court erred in granting the appellees summary judgment on her claims for racial and gender-based discrimination. Cobbins argues that sufficient evidence demonstrated a pattern of racial and gender-based discrimination to create a genuine dispute of fact for trial and that the trial court erred in failing to find that Cobbins had presented a prima facie case of such discrimination.
 
 I. Standard of Review
 
 8
 This Court reviews a decision granting summary judgment de novo. See Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127 (4th Cir.1987). Like the trial court, we apply the standard for summary judgment articulated in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Summary judgment thus is appropriate only if the parties do not dispute a genuine issue of fact that might affect the action's outcome. Id. at 248. To defeat summary judgment, a nonmoving party, who will bear the burden of proof at trial on a dispositive issue, must go beyond his or her pleadings with affidavits, depositions, interrogatories, or other admissible evidence to show specific facts that amount to a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1985). In addition--and particularly relevant here--unsupported speculation is not enough to defeat a summary judgment motion, Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir.1986), and, where evidence is merely colorable and not sufficiently probative, the trial court may grant summary judgment. Anderson, 477 U.S. at 251.
 
 II. The Sexual Harassment Claim
 
 9
 Cobbins is pursuing a "hostile environment" sexual discrimination claim pursuant to Title VII. This Court, following Meritor Savings Bank, FSB v. Vincent, 477 U.S. 57, 66 (1986), has recognized that certain workplace conditions may create a pervasively hostile atmosphere where commonplace occurrences veil insidious, gender-based discrimination. Title VII intends to eliminate such intimidating differential, gender-based treatment of employees. To prevail on a Title VII "hostile environment" claim, a plaintiff must show: (1) that the conduct complained of was unwelcome; (2) that the harassment was based on gender; and (3) that the harassment was sufficiently severe or pervasive to create an abusive work environment. Swentek v. USAIR, Inc., 830 F.2d 552, 557 (4th Cir.1987). The trial court assumed that Cobbins could meet the first requirement and concentrated on whether Cobbins presented a sufficient showing on the second two requirements to defeat summary judgment. This Court too will assume that Cobbins could adequately show that she did not welcome the complained of conduct.
 
 
 10
 Appellees argue that accepting Cobbins's statements as true (which appellees do not), Cobbins nonetheless fails to state sufficient facts to defeat summary judgment. Appellees assert that Cobbins's evidence does not show that the purported harassment was gender-based and does not show that the purported harassment was sufficiently severe or pervasive to create an abusive work environment. To satisfy these two prongs of the prima facie case, a plaintiff may show that the totality of the circumstances surrounding a plaintiff's employment amounted to the creation of a pervasively hostile work environment due to her gender. See Meritor Savings Bank, 477 U.S. at 68-69. The allegations at issue here, however, do not sufficiently display that the totality of the circumstances rendered her work environment pervasively abusive.
 
 
 11
 First, Cobbins states that Womack "asked her out for a drink." She does not state that Womack, in any manner, attempted to pressure her into accepting the offer, attached this request to any job-related incentive (such as a promotion or even continued employment) or asked again after Cobbins refused the offer. The EEOC Guidelines suggest that a single request, absent a coercive demand or ultimatum, most likely would not amount to the establishment of a hostile work environment. See 29 C.F.R. Sec. 1604.11 (1988). To be actionable, sexual harassment must be sufficiently severe "to alter the conditions of [the victim's] employment and create an abusive working environment." Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir.1982) (quoted with approval, Meritor Savings Bank, 477 U.S. at 67). On its own, this one-time request--absent coercive elements and demands--is not sufficient to have "altered the conditions" of Cobbins's workplace and thereby to have established a hostile work environment within the meaning of Title VII.
 
 
 12
 Cobbins argues that the impact of Womack's request was exacerbated by his further requests on several occasions that she perform secretarial tasks. Cobbins does not present evidence regarding how these requests created a hostile work environment. Cobbins suggests that these requests occurred because of her gender. Regardless, absent evidence that these requests created, perpetuated or promoted a hostile and abusive environment, they do nothing to buttress a Title VII claim.
 
 
 13
 Cobbins also states that after her altercation with Womack, the school superintendent offered her a choice between dismissal and entering therapy. Noticeably, she does not state that this alleged ultimatum was offered her because of her gender (or her race). Such an offer, if it had occurred, thus fails in any manner to evidence differential treatment due to gender (or race).
 
 
 14
 Finally, Cobbins argues that the alleged attack itself constituted a sufficiently severe predicate act to present a triable issue regarding whether the work environment was pervasively hostile. Appellees argue that even if the incident occurred as Cobbins details it (which they dispute), the incident was not based on sex or, as the district court put it: "[N]o evidence, affidavit or otherwise, has been presented which suggests that Womack struck the plaintiff because of her sex."[1] On this appeal, Cobbins highlights no evidence to the contrary. Cobbins does not state or display how the physical altercation was caused by her gender or how the altercation on its own may amount to sexual harassment.
 
 
 15
 To support her argument that the attack, as alleged, states a claim for gender discrimination, Cobbins points to Huddleston v. Roger Dean Chevrolet, Inc., 845 F.2d 900 (11th Cir.1988). She argues that Huddleston sanctions the finding of a prima facie case of sex discrimination due to a hostile workplace upon the showing of one physical incident provoked because of gender. Huddleston stands for no such proposition. First, in that case, whether plaintiff--who was a car salesperson--made a prima facie showing of a pervasively hostile workplace by virtue of a single physical incident was not at issue.[2] Nonetheless, substantial allegations of other actions evidenced sexual harassment in the workplace. These included allegations that, as a result of her rejecting dates with male salespersons, these men interfered with plaintiff's attempted sales and called plaintiff a "bitch" and a "whore." What Cobbins refers to in that case is that a male supervisor physically grabbed the plaintiff, moving her several feet (in a nonsexual manner). The court in Huddleston, however, used this evidence not to substantiate the basic prima facie case, but to assess whether the employer had notice of the hostile workplace. Id. at 904-05. Huddleston therefore offers Cobbins's claim little support.
 
 
 16
 This Court concludes that the district court below properly entered summary judgment in favor of the appellees on Cobbins's claim for sexual harassment. The alleged incidents of which Cobbins complains amount to a showing of hostile workplace (particularly the final altercation), but do not amount to a showing of a pervasively hostile workplace due to her gender. In other words, these alleged incidents--even if true--fail to support Cobbins's conclusive assertions that the incidents created a hostile and abusive workplace due to her gender and, therefore, fail to adequately support a Title VII claim. This Court thus concludes that the district court properly entered summary judgment on Cobbins's claim for sex discrimination.
 
 III. The Race Discrimination Claim
 
 17
 Cobbins's race discrimination claim is far more specious than her sex discrimination claim. Her statements refer to possible racial prejudice but in no way amount to allegations of factual occurrences that may exhibit race discrimination. Rather, Cobbins asserts that the general tenor and tone of her treatment "seem to indicate a racial tone." She presented no evidence at summary judgment that any of the actions taken were racially motivated. To defeat summary judgment, a party "may not rest on the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288 (1968). Cobbins has not made such a showing and summary judgment on the race discrimination issue therefore was and is appropriate.
 
 
 18
 For the foregoing reasons, we conclude that the district court properly entered summary judgment in favor of the appellees on each of Cobbins's sex and race discrimination claims.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Appellees assert that Cobbins has precluded herself from arguing that this attack amounted to sex discrimination because she has stated that the attack was not sexual. To view Title VII as proscribing only acts which are sexual, however, is to render Title VII both overbroad and underbroad. Title VII indirectly proscribes some acts which are sexual, but only as a result of its direct mandate: the elimination of discrimination and harassment based on gender. An action which is not actually sexual in nature may be taken because of the recipient's sex and may thereby amount to gender-based harassment
 
 
 [2]
 The issue in Huddleston was whether the employer could be held liable under Title VII for a pattern of sexual harassment including disparate treatment