N. Brown FELTY, Plaintiff-Appellant,

v.

GRAVES–HUMPHREYS COMPANY,
Defendant-Appellee.

No. 86–2573.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 6, 1987.

Decided May 21, 1987.

Rehearing and Rehearing En Banc
Denied July 22, 1987.

Nate Lavinder Adams, III (Donald W. Huffman; Bird, Kinder & Huffman, on brief), for plaintiff-appellant.

William Paul Wallace, Jr. (Bayard E. Harris; Woods, Rogers & Hazelgrove, on brief), for defendant-appellee.

Before HALL and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

WILKINSON, Circuit Judge:

Brown Felty was dismissed from his job at the Graves-Humphreys Company. He later sued under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34. Graves-Humphreys moved for summary judgment on the ground that Felty had not filed a claim with the Equal Employment Opportunity Commission within the statutory 180-day time limit. The case is now before us after a remand to the district court, in which we directed the district court to consider whether the doctrine of equitable estoppel would excuse plaintiff's failure to file a claim within the 180-day limit. The district court found that the doctrine of equitable estoppel did not apply because the employer's alleged conduct did not cause Felty to delay his EEOC filing.

We affirm.

I.

In 1982, the Graves-Humphreys Company underwent a substantial corporate reorganization which required a reduction in force. On November 12, 1982, Felty received notice that his last work day would be March 31, 1983, four and a half months later. Graves-Humphreys informed him that he would receive a bonus of four weeks pay if he worked through March 31 and that he would get paid time off for job interviews. Felty stated in his deposition,

however, that Frances Yates, the Vice President and General Manager of the newly-formed company, warned him that if he discussed the terminations with anyone, he would be subject to immediate dismissal.

Understandably, Felty discussed his termination with at least one other employee anyway, and learned that the company was keeping a younger worker on the job. In February, he consulted an attorney about the possibility of an age discrimination suit; the attorney told him that more information was needed to support an age discrimination claim. In April, after Felty's employment ended, he returned to the attorney and provided information about the other employees who had been terminated. Felty directed his attorney not to file a claim at that time because he was concerned about whether his workman's compensation payments, which he was to receive until May 31, would be jeopardized. He finally filed a claim with the EEOC in June and filed this civil suit in August.

Defendant moved for summary judgment under 29 U.S.C. § 626(d)(1), which requires the filing of a claim with the EEOC within 180 days as a prerequisite to a civil suit. In accordance with *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the district court ruled that the 180–day period began when Felty was given unequivocal notice of his termination on November 12 and expired in mid-May. Hence, Felty's claim was outside the time limit. The district court also found that the doctrine of equitable tolling did not excuse Felty's delay. The court therefore granted defendant's motion. *Felty v. Graves-Humphreys*, 604 F.Supp. 730 (W.D. Va.1985).

On appeal, this court agreed with the district court on the issue of equitable tolling, but remanded the case to the district court so that it could consider the issue of equitable estoppel. The earlier opinion explained, "Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act. Equitable es-toppel, in contrast, examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights." *Felty v. Graves-Humphreys*, 785 F.2d 516, 519 (4th Cir. 1986).

On remand, the district court held an evidentiary hearing and determined that the doctrine of equitable estoppel did not apply because Felty's delay in filing his EEOC claim beyond the time limit was not a result of any improper actions by Graves-Humphreys. It thereupon granted summary judgment for the employer.

The district court based its determination on four undisputed facts. First, Felty testified that he had not filed a claim before his dismissal on March 31 because his attorney advised him that he did not have enough evidence to support a claim. Second, Felty testified that the delay after March 31 resulted from his concern for his worker's compensation. Third, Felty testified that he disregarded the company's order by discussing his termination with two attorneys and at least one fellow employee. Finally, Felty testified that if he had known in February that he was required to file an EEOC claim within the time limit, he would have done so. The district court found "unequivocally" that Felty's decision to delay filing his claim was not a result of any coercion by his employer.

## II.

Felty argues that the district court erred in granting summary judgment on the equitable estoppel issue. The plaintiff's testimony, however, left no genuine issue of material fact as to whether the company had coerced Felty into delaying his claim beyond the 180–day limit. Hence, the grant of summary judgment was proper.

As a preliminary matter, we must set out the appropriate standard for reviewing the district court's decision. An appellate court generally reviews a grant of summary judgment *de novo*, applying the same standard as that applied by the district

court itself.[1] Plaintiff cannot, however, defeat a summary judgment motion simply by invoking the magic words "equitable estoppel" and offering a bare allegation of employer coercion. The Supreme Court has recently explained that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is not sufficient to defeat a summary judgment motion. *Ash v. United Parcel Service,* 800 F.2d 409, 411–12 (4th Cir.1986); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

Here the district court held an evidentiary hearing on the question of "whether Graves-Humphreys' actions improperly delayed Felty's EEOC complaint." This hearing, which bolstered the record upon summary judgment, was responsive to the terms of this court's remand, *see* 785 F.2d at 520. It also was an appropriate step on an issue, such as an equitable exception to the statutory limitations period, which is both preliminary and collateral to the underlying suit on the merits.

After the hearing, at which Felty testified at some length, the district court issued findings of fact. On summary judgment, such findings serve as a determination that a particular fact is not genuinely in dispute. Although such findings are not required on a summary judgment ruling, Fed.R.Civ.P. 52(a), the Supreme Court has emphasized that they are "extremely helpful to a reviewing court." *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. at 2511 n. 6. We do not accord such findings the full

measure of deference due after trial, *see Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). To do so would intrude on the sphere reserved for the ultimate trier of fact, in this case the jury, 29 U.S.C. § 626(c)(2). Recent cases of the Supreme Court have made increasingly clear, however, the affirmative obligation of the trial judge to prevent "factually unsupported claims and defenses" from proceeding to trial. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). *See also Anderson v. Liberty Lobby, supra; Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Trial court findings are consistent with the role for summary judgment elaborated by the Supreme Court. At a minimum, findings of fact upon summary judgment afford us both a surer basis for appellate review and an indication of the care with which the summary judgment record was handled by the district court.

### III.

Applying this standard, we uphold the district court's grant of summary judgment. In *Price v. Litton Business Systems,* 694 F.2d 963, 965–66 (4th Cir.1982), we explained the requirements of equitable estoppel:

> The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.

■ It has always been an element of estoppel that the plaintiff actually and rea-

---

**1.** Two exceptions to this rule should be noted. First, in a situation akin to summary judgment, where a jurisdictional question is involved, the district court is empowered to resolve factual disputes. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947); *Thigpen v. United States,* 800 F.2d 393, 396 (4th Cir.1986). Second, where both parties agree that the court may decide disputed issues of fact on the basis of evidence in the summary judg-

ment record, the court can make findings of fact even though the motion is styled one for summary judgment. *Fritiofson v. Alexander,* 772 F.2d 1225, 1239–40 (5th Cir.1985); *John v. State of Louisiana,* 757 F.2d 698, 706 n. 4 (5th Cir.1985). In such situations, an appellate court reviews the grant or denial of summary judgment under the "clearly erroneous" standard of Fed.R.Civ.P. 52(a), not the standard of Fed.R. Civ.P. 56(c).

sonably rely on the alleged misconduct in foregoing an assertion of his rights. "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984).

█ During his testimony before the district court on remand, Felty admitted three separate times that his delay in filing the claim did not result from improper conduct on the part of Graves-Humphreys. First, he testified that he did not file a complaint with the EEOC after meeting with his attorney in February of 1983 because his attorney told him "that it was too early really to do anything." The district court properly refused to hold Graves-Humphreys responsible for the advice of Felty's attorney. The earlier panel opinion affirmed the finding of the district court that "the actions of Graves-Humphreys did not conceal from Felty the information necessary to file an EEOC complaint at the time he was notified of his termination." 785 F.2d at 518.

Second, Felty testified that he did not file a complaint after March 31, 1983, his last day of employment, because he was afraid it might affect his workman's compensation benefits. As the district court noted, however, there was never any "allegation ... that the defendant did or said anything whatsoever to cause any apprehension about workman's compensation." Thus, the district court properly refused to hold the defendant responsible for coercion based on Felty's concern.

Finally, plaintiff testified on cross-examination that he would have filed an EEOC claim within the time limit if he had known it was required:

Q. Well, Mr. Felty, if an attorney had told you in February of 1983 that you had to file an EEOC claim within 180 days from the day you'd been informed of your discharge, you would have done it, wouldn't you?

A. If the—

Q. If the lawyer had told you that.

A. If I went to the lawyer for advice, yes.

Q. If he'd told you that, you would have done it.

A. I would think so.

In short, the record supports the district court's "unequivocal" finding that Felty filed his claim late for reasons wholly apart from any misconduct by the company.

As further evidence that the defendant's admonition did not improperly delay the EEOC filing, the district court noted that "the plaintiff appears to have ignored it completely and to have discussed his termination with virtually everyone except the EEOC within the 180 day period." Those with whom Felty discussed the termination included Harry Dooley, a fellow employee; an assistant U.S. attorney; and his own attorney. In addition, Lorenzo Dowdy, an ex-employee of the defendant, stated in his deposition that Felty discussed the matter with him. Felty may also have discussed his termination with George Sink, another fellow employee.

The court's earlier opinion in this case indicated that conversations with friends on the work force would not constitute *per se* evidence of a lack of coercion. 785 F.2d at 520. Rather, Felty's varied conversations can lead to either of two inferences. The first is that Felty simply failed to take the defendant's statement seriously. This is the inference that the district court drew. The second inference is that Felty discussed his termination only with lawyers and friends who could be expected not to notify the company.

The matter of Felty's conversations brings into focus two traditional canons of summary judgment law. As the non-moving party, Felty is entitled to have all reasonable inferences on this point drawn in his favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970). Under Fed.R. Civ.P. 56(e), however, the non-moving party "may not rest upon the mere allegations or denials of his pleadings" but instead "must set forth specific facts showing that there is a genuine issue for trial." This obligation is particularly strong when the non-moving party bears the burden of proof, as

Felty did, on the issue at trial. *See Celotex Corp.*, 106 S.Ct. at 2553. When an inference can be supported by evidence to save it from the status of speculation, we think a non-moving party should present that evidence. Here, the record is barren of any evidence that Felty evinced the slightest concern about employer retaliation in his conversations. There is no claim upon appeal under Fed.R.Civ.P. 56(f) that he lacked the opportunity to place this evidence before the court in the summary judgment record. Felty's failure to produce any evidence that the various conversations were tinged with apprehension of employer retaliation justified the district court's regard of the claim of coercion as speculative.

### IV.

The Supreme Court has stated that "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp.*, 106 S.Ct. at 2555 (1986). Defendant Graves-Humphreys has shown that plaintiff's own testimony belies his claim of equitable estoppel. The theory of "equitable estoppel" simply failed to survive the augmented record on remand.[2] Hence, the judgment of the district court is

*AFFIRMED.*

K.K. HALL, Circuit Judge, dissenting:

I am profoundly dismayed by the majority's disposition of this appeal. The most cursory review of the record demonstrates beyond peradventure that, on remand, the district court misapplied our earlier decision in this matter. Furthermore, it treated that opinion with palpable disdain. Today, the majority not only condones that action, it applauds it.

In *Felty v. Graves-Humphreys*, 785 F.2d 516 (4th Cir.1986) ("*Felty I*"), we concluded that a factual question, regarding whether the employer's coercive behavior had delayed Felty's efforts to enforce his rights under the Age Discrimination in Employment Act ("ADEA"), rendered summary judgment on the basis of the statutory limitation period inappropriate. We held that, if Felty could prove such conduct on behalf of Graves-Humphreys, the employer would be estopped from asserting any portion of the ADEA's 180–day limitation period in which such improper conduct retained its effect.

On remand, the district court conducted a new evidentiary hearing on the issue of equitable estoppel which it scathingly described as a "fear of filing" argument that had never been asserted until "the fourth circuit provided ... [Felty] with a script." In view of the district court's evident displeasure, it is unsurprising that it again found summary judgment appropriate. It was also, in my view, clearly wrong.

The district court held that there could be no genuine question regarding whether Felty had been coerced by comments made by Francis Yates, a Graves-Humphreys vice president, because (1) he supposedly ignored that admonition and "discussed his termination with virtually everyone...."[1] and (2) Felty admitted that if his attorney had advised him to file a complaint in February, 1983, he would have done so. The

---

2. Unlike the dissent, we do not believe the district court was disrespectful of the earlier panel decision in this case.

1. The district court's conclusion that Felty discussed his termination with "virtually everyone" is not only a significant overstatement, it is based on inferences drawn against Felty in contravention of his right, as the non-moving party, to have the inferences made in his favor.

In the proceedings below in *Felty I*, Felty stated that he had discussed his pending termination only with a friend, Harry Dooley. On remand, Graves-Humphreys' counsel sought to elicit an admission from Felty that he had also discussed the termination with two other friends, George Sink and Lorenzo Dowdy. To the best of Felty's recollection, he could not remember discussing the matter with either. Despite the equivocal testimony, the district court appears to have assumed that both conversations occurred.

majority believes that both conclusions support an award of summary judgment. I disagree.

In *Felty I*, we held that the essential inquiry in cases of equitable estoppel focuses upon the "length of time that an employer's coercion is effective." *Felty*, 785 F.2d at 520. Coercion loses its improper effect when the employee takes an affirmative step to enforce his rights. We expressly stated, however, that "private conversations with friends in the work force would not qualify as an affirmative act."[2] *Id.*

Initially, Felty had stated that he discussed his pending termination in confidence only with one friend from the time he was notified by Yates in November of 1982 until he sought legal advice in February of 1983. On remand, there was some indication that Felty *may* have talked about his problem in confidence with two other friends. Assuming that they took place at all, not only would those two additional conversations be something less than discussions with "virtually everyone," they would also be substantially irrelevant in light of our holding in *Felty I*.

It is also of scant significance whether Felty would have filed his ADEA claim had he been advised to do so by his attorney. Although we left this question open in *Felty I*, it is likely that by seeking legal assistance in February, 1983, Felty engaged in an affirmative act that ended the period of time in which the employer's alleged coercion was effective. If so, the 180–day period of limitations unquestionably began to run. Any actions taken or decisions made by Felty after that date have no relevance, however, to the question of whether Graves-Humphreys should be estopped from counting any days prior to that time toward the 180 limit.

The majority also chooses to ignore a significant portion of the opinion below in which the district court's misinterpretation of *Felty I* was unmistakable. Citing *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527 (11th Cir.), *cert. denied*, 464 U.S. 983, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983), the court concluded that even if Felty had been delayed by Graves-Humphreys until February, he could not assert estoppel since he still had ample time within the statutory period in which to file a complaint.

*Kazanzas*, which deals with equitable tolling based on an employee's lack of knowledge, is not only inapposite, the district court's reliance on that decision evidences a substantial misunderstanding of the implication of equitable estoppel in the present context. The effect of equitable estoppel is to exclude from the computation of the statutory limitation period *all* time in which the conduct giving rise to the estoppel has operated. We made this point beyond question in *Felty I* when we stated that "if Graves-Humphreys exerted improper influence that lasted until February, 1983, the EEOC complaint filed in June would be timely." *Felty*, 785 F.2d at 520. That statement cannot be reconciled with the district court's citation to *Kazanzas*.

Despite the majority's lengthy and strained examination of the proper scope of summary judgment, I believe it is clear that material questions of fact remained unresolved in this case. Felty testified, on remand, that he was threatened with immediate discharge if he discussed his termination with anyone in or out of the company. He further testified that as a result of that threat, he failed to seek legal assistance for nearly three months. The issue of employer coercion in this instance thus becomes a question of witness credibility and not as the majority suggests "unsupported speculation."[3]

By failing to offer any contrary evidence or to cross-examine Felty on the nature of

---

**2.** The majority opinion subtly mischaracterizes and weakens this clear holding by citing *Felty I* for the proposition that conversations with friends are not *"per se* evidence" of lack of coercion. The majority's interpretation allows consideration of that which we determined in *Felty I* should not be considered.

**3.** This issue involves far more than the "mere existence of a scintilla of evidence." A proper

resolution requires both an assessment of Felty's credibility and a weighing of the potential impact of the statements allegedly made by Yates. Rather than an issue so "one sided that one party must prevail as a matter of law," it presents a question "on which ... [a] jury could reasonably find for the plaintiff." Under *Anderson v. Liberty Lobby*, —— U.S. ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), that is

his conversation with Yates, Graves-Humphreys arguably conceded for purposes of summary judgment that the threat was made. Furthermore, Graves-Humphreys offered no additional relevant evidence to demonstrate that the alleged coercion was either ineffective or lost its force prior to February, 1983. At a minimum, the question of whether an equitable modification of the ADEA limitation period was appropriate was an issue that should have gone to the trier of fact.

By upholding the grant of summary judgment in this case, the majority sanctions a clear distortion of our previous decision. I fail to see how we can expect the district courts to follow our pronouncements if subsequent panels of this Court fail to accord proper deference to those decisions. I, therefore, respectfully dissent.

more than sufficient to defeat a motion for