966 F.2d 1442
 1992-1 Trade Cases P 69,848
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HAMPTON AUDIO ELECTRONICS, INCORPORATED, Plaintiff-Appellant,
v.
CONTEL CELLULAR, INCORPORATED, Defendant-Appellee,
and
CONTEL CORPORATION; Daniel C. King, Defendants.
 No. 91-2186.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 8, 1992
Decided: June 10, 1992
As Amended Aug. 6, 1992.
 
 Argued: Joseph William Kaestner, Kaestner, Spieth & Gays, Richmond, Virginia, for Appellant. Jack Edward McClard, Hunton & Williams, Richmond, Virginia, for Appellee.
 On Brief: Thomas H. Gays, II, Thomas B. Weidner, IV, Kaestner, Spieth & Gays, Richmond, Virginia, for Appellant.
 R. Noel Clinard, Debbie G. Seidel, Hunton & Williams, Richmond, Virginia, for Appellee.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Hampton Audio Electronics, Inc., ("Hampton") which, prior to going out of business, sold access to a cellular telephone service for Contel Cellular, Inc. ("Contel"), brought an action against Contel in district court, alleging violations of the federal and state antitrust acts, and also of the Virginia Retail Franchising Act ("the VRFA"). The district court granted Contel's motion for summary judgment and dismissed Hampton's claims. Two main issues are presented in Hampton's appeal: whether there is evidence from which a jury could conclude that a valid written franchise agreement existed between Hampton and Contel; and whether the customer and territorial restrictions imposed by Contel are illegal per se under federal and state antitrust laws.
 
 
 2
 We review the grant of summary judgment de novo. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127 (4th Cir. 1987). We affirm the district court's grant of summary judgment as to the antitrust claims and reverse as to the claim under the VRFA.
 
 I.
 
 3
 Contel provides cellular telephone service in the Tidewater area of Virginia, using independent agents and a direct sales force to sell access to this service. Before Hampton began selling access to Contel's Cellular Telephone Service, it sold car stereos and other electronic equipment. Hampton went out of business in 1988.
 
 
 4
 According to Hampton, Contel and Hampton entered into a franchise agreement on February 4, 1986, which provided that Hampton was a nonexclusive sales agent for Contel in the Norfolk area. The district court, however, found that the alleged agreement was dated 1984 and held it invalid because Dan King, who purportedly signed the agreement on behalf of Contel, was not employed by Contel in 1984.
 
 
 5
 Hampton alleges that, while it was Contel's agent, Contel imposed several competitive restrictions upon it and other independent sales agents, which restrictions were illegal per se under state and federal antitrust laws. Hampton claims that Contel: (1) forced the agents to boycott a telephone sold by Radio Shack; (2) required agents to sell telephones at a price; and (3) permitted only Contel's direct sales force to sell to large customers and governmental agencies.
 
 
 6
 Hampton asserts that Contel also caused Hampton and CSI, another independent sales agent, to accept an agreement which divided the market for installing cellular telephones between Hampton and CSI. Hampton claims that Contel later acquired CSI and then refused to refer any of its customers to Hampton, so Contel could perform these installations.
 
 
 7
 The district court granted Contel's motion for summary judgment on the antitrust claims, finding that the customer and territorial restrictions were not illegal per se, that Hampton failed to produce any evidence of a boycott, and that Hampton failed to produce any evidence of injury or damages caused by the price fixing.
 
 II.
 
 8
 The district court dismissed Hampton's claim under the VRFA, because it found that no valid written contract existed between Hampton and Contel, as required by the VRFA. Hampton produced a copy of a contract, purportedly signed by Dan King on behalf of Contel, which Hampton alleges is the franchise contract between Contel and Hampton. The court found that the only date in the agreement is February 4, 1984, and concluded that the agreement is invalid because Dan King was not employed by Contel until 1985. Hampton argues, however, that the contract contains two different dates, one of which is 1986, and that the existence of contradictory dates raises a jury question as to the correct date.
 
 
 9
 The agreement is a typed document containing blank spaces which were filled in by hand with relevant information. The February 4th, 1984, date appears on the first page of the Agreement, with the words "4 ... February" filled in by hand and the year "1984" preprinted. The last page of the main body of the agreement is signed by King and James Norton, Hampton's owner at the time, under the statement: "IN WITNESS THEREOF, the parties have executed this Agreement as of the date first above written." This, according to the district court, conclusively established that the agreement was executed in 1984.
 
 
 10
 Hampton contends that several addendum pages were attached to the agreement and that language appearing on the last addendum page, labeled "CONTEL/AGENT QUOTA PROGRAM" creates an issue of fact as to the correct date of execution, because it is also signed by Norton and King and is dated February 4, 1986. Contel argues that the addendum pages are not part of the original agreement and represent a separate agreement between Hampton and Contel.
 
 
 11
 A close reading of the agreement, however, lends support to Hampton's claim that the addendum pages are part of the original agreement. The main body of the agreement contains several references to the addendum pages. There is also evidence that the final signature page, dated 1986, is the "Addendum 5" referred to in the main body of the Agreement, even though it is not labeled as such. The signature page, labeled "CONTEL/AGENT QUOTA PROGRAM," provides the base commission schedule for Contel agents, and the agreement specifically refers to Addendum 5 for the commission schedule.
 
 
 12
 There is evidence from which a jury reasonably could conclude that the addendum pages, including the signature page, were part of the original agreement. Therefore, the 1986 date on the signature page conflicts with the 1984 date on the first page of the agreement, and it is clearly the province of the jury to decide this issue of fact: was the agreement executed in 1984 or in 1986?
 
 
 13
 Contel argues that summary judgment on this claim is appropriate even if 1986 is the correct date, because Dan King never had the authority to enter into such a contract on behalf of Contel. The district court, however, concluded that there was "at least some support" for Hampton's claim that King possessed the authority to enter into contracts on behalf of Contel. There are disputed issues of material fact as to the existence of the contract, so we reverse the district court's grant of summary judgment on this claim.
 
 III.
 
 14
 Section 1 of the Sherman Act prohibits a contract or conspiracy in restraint of trade.* Courts, in determining whether a particular activity violates the Sherman Act, generally apply the "rule of reason" analysis, under which the activity is held to violate the Sherman Act only if the factfinder determines that it imposes "an unreasonable restraint on competition." Continental T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 49 (1977). Certain types of restrictions, which are "manifestly anticompetitive," are illegal per se. Id. at 50. Horizontal restrictions, those "imposed by agreement between competitors," are illegal per se, while vertical restrictions, "those imposed by agreement between firms at different levels of distribution," are to be analyzed under the "rule of reason," with the exception of vertical price fixing claims. Business Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 730 (1988). Hampton alleges that Contel imposed several restrictions on Hampton and the other retailers, including customer and territorial allocations, a group boycott, and price fixing.
 
 A.
 
 15
 The district court concluded that the customer and territorial restrictions imposed by Contel were essentially vertical in nature and thus not illegal per se. Hampton argues that Contel, as the supplier of a cellular telephone service, also competed with the independent sales agents in selling access to the service, and this dual role caused the restrictions to become horizontal and thus illegal per se.
 
 
 16
 Dual distributorships, such as the one at issue in the present case, have caused courts difficulty in classifying the restrictions as horizontal or vertical, because they contain elements of both. Some courts have held that the presence of a horizontal element converts an otherwise vertical arrangement into one which is illegal per se. See, e.g., Pitchford v. Pepi, Inc., 531 F.2d 92 (3d Cir.), cert. denied, 426 U.S. 935 (1976). We have held that such restrictions are subject to the "rule of reason" analysis if the restrictions"redound[ ] primarily to the benefit of the manufacturer as a result of increased interbrand competition." Donald B. Rice Tire Co. v. Michelin Tire Corp., 638 F.2d 15, 16 (4th Cir.), cert. denied, 454 U.S. 864 (1981).
 
 
 17
 The Supreme Court has recognized that territorial and customer allocations, when imposed by a supplier on its retailers, are not "manifestly anticompetitive," but actually promote interbrand competition. GTE Sylvania, 433 U.S. at 54-56. The central issue, therefore, is whether the effect of these restrictions on interbrand competition necessarily changes when the supplier decides to become a retailer. Several circuit courts have held that it does not. See Krehl v. BaskinRobbins Ice Cream Co., 664 F.2d 1348, 1356 (9th Cir. 1982); Red Diamond Supply, Inc. v. Liquid Carbonic Corp., 637 F.2d 1001, 1004 (5th Cir.), cert. denied, 454 U.S. 827 (1981); Copy-Data Sys., Inc. v. Toshiba America, Inc., 663 F.2d 405 (2d Cir. 1981). If Contel had reserved the large customers for an independent agent, rather than its own sales force, the restriction would not have been per se illegal, Hampton has produced no evidence showing that allocating the large customers to its direct sales force in any way affected interbrand competition. Therefore, the customer and territorial restrictions are analyzed under the "rule of reason." Hampton elected to proceed in this case under the theory of per se illegality. There are no material facts in dispute, and the law of this circuit is clear that this is no more than a vertical agreement between a supplier and its sales agent, so we affirm the district court's grant of summary judgment on this claim.
 
 B.
 
 18
 The district court held that Hampton had failed to produce any evidence supporting its claim that Contel forced Hampton and the other agents to boycott a certain model of telephone sold by Radio Shack. The record reflects only that Contel directed its agents not to trade with one particular Radio Shack, which had become a competitor in the cellular business, and this does not support a claim of an illegal boycott. Therefore, we affirm the district court's grant of summary judgment on the claim of a group boycott.
 
 C.
 
 19
 The district court found that Hampton had produced sufficient evidence of price fixing by Contel to survive a motion for summary judgment. Price fixing, whether vertical or horizontal, is illegal per se. The district court nonetheless dismissed Hampton's claim because it concluded that Hampton had not presented sufficient evidence of an injury or sufficient proof of damages, both of which are necessary elements in a Sherman Act claim. See MCI Communications Corp. v. American Tel. & Tel. Co., 708 F.2d 1081, 1161 (7th Cir.), cert. denied, 464 U.S. 891 (1983). Hampton concedes that it cannot show injury based on the price fixing claim alone, so we affirm the district court's grant of summary judgment.
 
 
 20
 We therefore affirm the district court's grant of summary judgment on the claims under the federal and state antitrust laws, and reverse the district court's grant of summary judgment on the claims under the Virginia Retail Franchising Act. We express no opinion on the question of damages under the Virginia Act, becuase the district court made no mention of such damages. Therefore, this issue is still open before the district court.
 
 
 21
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 *
 Hampton's claim under the Virginia Antitrust Act is subject to the same analysis as its claim under the Sherman Act. Va. Code Ann. § 59.1-9.17 (1950)