99 F.3d 1138
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sharon FOSS, Plaintiff-Appellant,
v.
Francis DRAKE, Individually and as an Agent and Servant of
Eaglewings Systems; and Eaglewings Systems,
Defendants-Appellees.
 No. 95-6364.
 United States Court of Appeals, Sixth Circuit.
 Oct. 11, 1996.
 
 Before: MARTIN, Chief Judge; CONTIE, Circuit Judge; and CARR*, District Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Sharon Foss, appeals the district court's grant of summary judgment to defendants-appellees, Francis Drake and Eaglewings Systems. For the following reasons, we affirm.
 
 I.
 
 2
 This is a wrongful death diversity action brought by the surviving spouse of Carson Foss, who was an employee of the Tennessee/Alabama Line Maintenance Company, and died as a result of an accident which occurred on March 25, 1991. On this date, Carson Foss was working on East Main Street in Jonesboro, Tennessee as a member of a four-man line maintenance crew responsible for clearing the power lines of trees and shrubs. In order to perform their work, the crew was using a bucket truck or "cherry picker" equipped with a two-piece boom approximately 40 feet in length with a bucket at the end of the boom. The "cherry picker" was parked in the westbound lane of travel with the boom stretched across the eastbound lane, allowing the crew to work on a tree located several feet from the eastbound lane. The truck was stabilized by a set of outriggers on each side of it.
 
 
 3
 On the date of the accident, Carson Foss was in the bucket, cutting back the limbs of the trees. There were two flagmen, located on both sides of the truck, directing traffic. The crew had been trimming trees all morning on Main Street and had been at the location of the accident for about one-half hour. Prior to the accident, many vehicles had passed safely under the boom, including cars, trucks, and school buses.
 
 
 4
 On the morning of March 25, 1991, defendant Drake loaded his truck, a tractor-trailer, at the Burton Rubber Company just outside of Jonesboro en route to Greenwood, Arkansas. Mr. Drake was employed as a truck driver with defendant Eaglewings Systems, where he had worked for approximately two years. Mr. Drake had been driving tractor-trailer units for approximately 20 years.
 
 
 5
 At about 3 p.m., defendant Drake approached the work site, noticed the boom stretched across the roadway, and slowed his vehicle to approximately three miles per hour. Mr. Drake was traveling east on Main Street and as he approached, he was stopped by Larry Garst, the first flagman.
 
 
 6
 In accordance with Larry Garst's instructions, defendant Drake brought his vehicle to a complete stop and waited for a signal that the lane was safe for him to proceed. Larry Garst motioned to Carson Foss, plaintiff's husband, who was in the bucket, to raise the boom so that Drake's truck could pass under it. Mr. Foss raised the boom. After Larry Garst motioned for defendant Drake to proceed, Drake began to move up the hill toward the bucket truck at approximately three miles per hour. When he got to within about 10 to 15 feet in front of the truck, the flagman stopped him for a second time. Mr. Drake stated that he independently determined that the boom was high enough for his tractor-trailer to safely proceed underneath it.
 
 
 7
 After the flagman motioned for Drake to go forward, he moved the truck at a slow crawl forward. The tractor portion of defendant's vehicle proceeded under the boom safely. However, as the trailer portion was going under the boom, contact was made between the trailer and the lower portion of the boom. The knuckle, where the two parts of the boom were joined together, broke, the upper portion of the boom plunged downward, and Mr. Foss fell to the road in his bucket, receiving several injuries from which he later died.
 
 
 8
 Jerry Garst, the second flagman, immediately signaled for defendant to stop, and defendant complied with this request and brought his truck to a complete stop. Both flagmen testified that defendant complied with all of their instructions throughout the entire incident. Both flagmen also testified that defendant did not operate his vehicle in a careless manner. Jerry Garst, the second flagman, who was standing 10 to 15 feet in front of the cherry picker and witnessed the accident, testified that the boom had suddenly dropped, striking the trailer, and that if the boom had not dropped, the truck would have been able to safely pass underneath it. Larry Garst, the first flagman, testified that there was approximately one and one-half feet of clearance. He stated that if he had been unsure of whether defendant's vehicle could safely pass under the boom, he would not have motioned for defendant to proceed.
 
 
 9
 Plaintiff Sharon Foss filed the original action in this case in the United States District Court for the Eastern District of Tennessee on August 8, 1991. She entered a voluntary dismissal without prejudice on May 14, 1992 and refiled her action on May 14, 1993. On August 17, 1995, defendants filed a motion for summary judgment, and plaintiff filed a response. On September 14, 1995, the district court granted defendants' motion for summary judgment. Plaintiff timely filed an appeal.
 
 II.
 
 10
 We must determine whether the district court erred in determining that defendants were entitled to summary judgment as a matter of law.
 
 
 11
 We review a grant of summary judgment de novo. Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir.1987). Summary judgment is appropriate in those cases in which there is no genuine dispute as to material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). All permissible inferences must be drawn from the underlying facts in the light most favorable to the party opposing the motion. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). A plaintiff must present significant probative evidence in support of the allegations made in her complaint to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).
 
 
 12
 In the present case, plaintiff Sharon Foss claims that defendant Drake was negligent in attempting to drive his tractor-trailer under the boom of the cherry picker and should have gotten out of his truck to make an independent determination whether there was sufficient clearance. Plaintiff contends that there is a genuine issue of fact about how the accident occurred. Defendants Drake and Eaglewings Systems, Drake's employer, argue that there is no genuine issue of material fact because there is no evidence that defendant Drake was negligent.
 
 
 13
 The district court held that a careful review of all the evidence in the record made it clear that plaintiff Foss could not carry her burden of proof that defendant Drake was negligent. The district court stated the following in this regard:
 
 
 14
 No witness to the accident, including the flagman and Mr. Drake himself (who claims to have made an independent determination that there was sufficient clearance to pass under the boom) has suggested that there was insufficient clearance. In fact, the overwhelming evidence is that the boom came down on the trailer after the tractor portion of the rig had already passed safely under it and that the tractor had a windfoil making it just as tall as the loaded trailer. Accordingly, the Court finds as a matter of law, that Mr. Drake was not negligent in proceeding when instructed to do so.
 
 
 15
 ....
 
 
 16
 The eyewitness testimony, the physical evidence from an examination of the boom itself, and the photographs of the accident scene all indicate that, for some unknown reason, the boom came down fast onto the truck. One possible explanation is that Mr. Foss accidentally lowered the bucket himself. Another is that the knuckle of the boom, which has been found to have a pre-existing crack in it, simply chose this inopportune time to fail. While the Court agrees that the evidence is inconclusive, this does not mean that the case must go to the jury in the absence of any indication of fault on Mr. Drake's part.
 
 
 17
 We agree with the district court's analysis as the evidence in the record supports his conclusions. The uncontroverted testimony is that defendant Drake's vehicle did not hit the boom or the outriggers. Although it is not clear exactly what caused the boom to drop, be it mechanical failure, operator error, or otherwise, the eyewitness evidence is undisputed that defendant's vehicle did not strike the boom; instead the boom dropped and hit the trailer portion of the truck.
 
 
 18
 The uncontroverted testimony in this case is also that if the boom had not dropped, the tractor-trailer would have been able to safely pass underneath it. Larry Garst testified that when Drake started to move forward, after stopping a second time, the boom was high enough for his truck to get underneath it. He testified that there was approximately one and one-half feet of clearance and that if he was not sure that defendant's vehicle could safely pass, he would not have motioned for defendant to proceed forward. Likewise, the second flagman, Jerry Garst, testified that there was "plenty of room" for the tractor-trailer to go under the boom when the truck started to go under it.
 
 
 19
 Jerry Garst, who witnessed the accident, described how he motioned to Mr. Foss to boom up, how Foss complied, and how Foss was waiting for the truck to go underneath him. Jerry Garst's testimony was as follows:
 
 
 20
 Q. Then, what did you do?
 
 
 21
 A. I motioned the tractor and trailer on.
 
 
 22
 Q. And did he start coming forward then, Mr. Drake?
 
 
 23
 A. Yes.
 
 
 24
 Q. At still crawling or can you give an estimate of his speed?
 
 
 25
 A. Yeah, crawling, yeah.
 
 
 26
 Q. And tell me what happened.
 
 
 27
 A. Well, about--about the time he got up there where his trailer and the boom was, why, the bucket dropped, the boom dropped and it caught the cylinder on the bottom part of the boom, the corner of the trailer did.
 
 
 28
 Q. All right. Had the tractor part of the tractor-trailer already gone under the boom?
 
 
 29
 A. Yes, it had that big air stoop [windfoil], you know, on top of it, and it had done gone in under it.
 
 
 30
 Q. So it was clear?
 
 
 31
 A. Yes.
 
 
 32
 Q. Now, did the trailer strike the boom or did the boom come down on the trailer?
 
 
 33
 A. The boom dropped.
 
 
 34
 Q. The trailer--
 
 
 35
 A. And the trailer hits it, you know. As soon as I seen what happened, I motioned for him to stop and he stopped.
 
 
 36
 Q. So at the point where the trailer started to go under the boom, is it your testimony that the boom dropped?
 
 
 37
 A. Yes.
 
 
 38
 Q. Did it drop onto the trailer?
 
 
 39
 A. Yes, onto--well, it dropped on the front of the trailer and the cab, it dropped just enough to barely catch the corner of the trailer.
 
 
 40
 Q. If the boom had not dropped, would the trailer have been able to go under it?
 
 
 41
 A. Yes.
 
 
 42
 Q. Do you know what caused the boom to drop?
 
 
 43
 A. No, sir, I don't.
 
 
 44
 Q. But it's your testimony the trailer did not hit the boom to cause it to drop?
 
 
 45
 A. Right.
 
 
 46
 Deposition of Jerry Garst at 20-21 (Joint Appendix at 74-75).
 
 
 47
 Mr. Drake testified that he had determined, based on his observation of the height of the boom and his knowledge of the height of his trailer, that he could proceed safely under the boom. He testified that after Mr. Foss had boomed up and the flagman motioned him forward, he proceeded very carefully until he was told to stop, which was after impact between the truck and the boom.
 
 
 48
 Defendants' witness, David G. Brown, who was a mechanical engineer, testified about the cause of the accident, and his testimony supports the eyewitness account. Brown was an engineer who did automated accident investigation. The engineer testified that he found no evidence of a damaging impact to the boom, which would be necessary under plaintiff's theory of the case that the truck hit the boom because of insufficient clearance. After examining the boom, the engineer ruled out the possibility that the truck moved up to the boom and exerted horizontal force on the boom by pushing against it. The engineer based his analysis on an examination of the fracture surfaces in the knuckle and the boom. The engineer testified that if there were a force sufficient to exert a horizontal force on the boom such as would stress the fracture site to the point at which it would break and fall, he would expect to see an abrasion on the side of the boom consistent with this theory and that he did not find such an abrasion. The engineer described in some detail the fracture site, which he believed contained a pre-existing crack, as follows:
 
 
 49
 The fracture surface, I have not seen any photographs in ages, but there were areas where the fracture surface was soiled. You could tell it was an irregular fracture surface where it was stained with oil, road dirt, grime. It was clearly an old fracture, discolored approximately 50 percent of the fracture surface, and then the rest of the fracture surface was bright and clean.
 
 
 50
 Deposition of David G. Brown (Joint Appendix at 574). The engineer testified that the old fracture flowed into the new fracture site. Thus, there is evidence that there was a prior defect or crack in the knuckle of the boom, which might have contributed to the cause of the accident. Based on this, we agree with the district court that the eyewitness testimony and the physical evidence from an examination of the boom itself indicate that Mr. Drake did not strike the boom.
 
 
 51
 The only evidence which Ms. Foss suggests supports her theory of the case (that the truck negligently struck the boom) is the testimony of William A. Miller, who was driving behind the tractor-trailer at the time of the accident. However, Mr. Miller testified that because he was looking at some papers on the seat of his car, he was not looking when the accident occurred. He merely testified that he heard a noise, which at the time, he had interpreted as the tractor-trailer hitting the boom. However, he did not say that he actually saw the tractor-trailer hit the boom. He testified that when he did look up, he saw the second leg of the boom wobbling and then saw it come plummeting down, thrusting the bucket onto the pavement. As the district court pointed out, Mr. Miller may well have heard the crack of the metal failure when the knuckle of the boom broke. Also, there was testimony that the tractor portion of the rig with the windfoil, which was approximately the same height as the trailer, had already safely passed under the boom before the accident occurred.
 
 
 52
 Plaintiff's alleged experts at trial, who stated they believed Drake was negligent, had no experience analyzing accidents and admitted they had not reviewed the eyewitness testimony or examined the physical evidence. Because there is no evidence in the record to indicate that Mr. Drake negligently caused the accident by driving his tractor-trailer under the boom and struck it because of insufficient clearance or that he hit the outriggers, plaintiff's claim cannot withstand a motion for summary judgment.
 
 
 53
 To conclude, plaintiff was not able to produce any probative evidence to support her theory that the accident occurred as a result of Drake's negligence. Therefore, the district court properly granted defendants' motion for summary judgment. The decision of the district court is hereby AFFIRMED.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation