**Gregory A. NEWMAN, Plaintiff,**

v.

**Charles O. GREEN, et al., Defendants.**

**Gregory A. Newman, Plaintiff,**

v.

**State of Maryland, Defendant.**

**Nos. AMD 01–1906, AMD 01–3825.**

United States District Court, D. Maryland.

Filed: April 29, 2002.

Diane Martin Littlepage, Glen Burnie, MD, for Plaintiff.

Keven Bock Karpinski, Allen Karpinski Bryant and Karp PA, Baltimore, MD, for Defendants.

## MEMORANDUM

DAVIS, District Judge.

These cases arise out of the arrest of plaintiff Gregory Alexander Newman by a deputy sheriff of Queen Anne's County, Maryland, defendant Charles O. Green. In response to preliminary defense motions, in an order filed September 18, 2001, in Case No. AMD 01–1906, I observed that "this is one of the all too frequent instances in which a civil rights plaintiff has resorted to the discredited 'shotgun' approach and unduly and unnecessarily complicated a fairly straightforward damages action instituted pursuant to 42 U.S.C. § 1983." Accordingly, I ordered that the initial round of discovery would be limited to the federal claims against defendant Green, the arresting officer, and the only defendant who had contact with Newman in connection with the events in suit.

In the meantime, also in Case No. AMD 01–1906, I had dismissed, by order entered on September 4, 2001, all claims against defendant "Maryland State Police" on the ground that "Maryland State Police" is not an entity or agency with the capacity to be sued in federal court. Plaintiff sought reconsideration of the dismissal of "Maryland State Police" and the motion for reconsideration was denied. In response to the dismissal of "Maryland State Police" and my observation that plaintiff's claims against the State of Maryland were clearly barred by the Eleventh Amendment, plaintiff filed a second action, this one in the Circuit Court for Baltimore City, naming as the defendant "State of Maryland." Although the "State of Maryland" was named in the state court complaint, the body of the complaint made it clear that plaintiff was seeking to assert claims against the Office of the Sheriff of Queen Anne's County, the employer of defendant Green. Accordingly, the Maryland Attorney General did not appear in the state court case but, instead, deferred to counsel for the Office of the Sheriff of Queen Anne's County. The state case was removed to this court, and is pending as Case No. AMD 01–3825. I stayed Case No. AMD 01–3825, consonant with my order bifurcating the on-going proceedings in Case No. AMD 01–1906.

In Case No. AMD 01–1906, the first round of discovery has concluded, and now pending is the motion for summary judgment filed by defendant Green. The motion has been fully briefed and no hearing is needed. For the reasons stated herein, the motion shall be granted. Accordingly, judgment shall be entered in favor of all

defendants in both cases as to all federal claims, and, in the absence of diversity of citizenship (notwithstanding plaintiff's allegation in the complaint that jurisdiction exists under 28 U.S.C. § 1332), the state law claims alleged in Case No. AMD 01–1906 shall be dismissed without prejudice for lack of jurisdiction.

## I.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex*

*Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991). Of course, the facts as well as justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indust. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

## II.

The basic, cardinal facts are not disputed. Newman had just gotten off work and was driving to a neighborhood liquor store to cash his check on June 3, 2000, at about 5:30 p.m. in Grasonville, Queen Anne's County, Maryland. The front license plate on his vehicle was not installed on the vehicle as required by Maryland law but was in the dashboard of the vehicle on the passenger side. Defendant Green was on patrol accompanied by a County employee under a "ride-along" program. Green observed that the front license tag was missing (there is no dispute that he did not learn that the missing tag was in the dashboard until after he arrested Newman, as described below) and he undertook to make a traffic stop to investigate. Apparently, Green was required make a u-turn to go after Newman.

By the time Green caught up with Newman, Newman had parked his vehicle in the parking lot of the liquor store and had gotten out of the vehicle. Green observed Newman walking toward the liquor store, but he did not recognize Newman as the operator of the vehicle missing the front tag. Green pulled into the parking lot behind Newman's vehicle and used his ve-

hicle radio to call in the tag number Newman's vehicle. Newman had left his paycheck in the vehicle; thus, he immediately left the liquor store to retrieve it. Upon seeing Newman reach into the vehicle, Green called over to Newman and asked Newman if he was the operator of the vehicle. Newman said "yes" or nodded.

It is at this point that the encounter got very ugly, and needlessly so. Green was waiting for the dispatcher to respond to his request for the vehicle registration information and, because his radio battery was in the recharge unit in his vehicle, he did not believe he could take the radio with him in order to approach Newman. Thus, while remaining in his vehicle so as to hear the dispatcher's response to his inquiry, he either asked and/or ordered Newman to approach him with the vehicle registration and Newman's driver's license. For reasons apparently related to race (Newman is African–American; Green is white), Green's failure to explain the reason for his request to Newman, Newman's exhaustion from a long day at work, and, perhaps, other reasons, as well, there ensued a profane exchange of shouted orders to Newman to approach Green, accompanied by threats that Newman would be arrested if he persisted in his refusal to come to the officer with his driver's license and vehicle registration in hand, and defiant refusals by Newman to comply.

When Newman, finally ignoring Green, headed back into the liquor store, Green, no doubt embarrassed (the ride-along participant observed the entire encounter) decided to place Newman under arrest for violation of Maryland Code Ann., Art. 27, § 121 (failure to obey a lawful order of a law enforcement officer to prevent a disturbance of the peace). It is undisputed in the summary judgment record (although counsel's argument overlooks the lack of any dispute on this score) that Newman

resisted Green's efforts to place him under arrest. Specifically, Newman flailed his arms and otherwise forcefully resisted Green's efforts to handcuff Newman's hands behind his back. The two men struggled as a crowd gathered. Eventually, Green called for backup because some of the persons in the crowd attracted by the struggle to handcuff Newman, who was yelling and addressing the crowd, made statements about the encounter and drew close to where the struggle was taking place. Indeed, two persons in the crowd were also arrested, including a minor, Newman's nephew, who had been playing basketball nearby.

Although the prolix, convoluted complaints is virtually impossible to read with clear understanding, the briefing on the summary judgment motion demonstrates that Newman does not seek damages for the *fact* of his arrest under federal law (although the complaint contains claims for "false arrest" under state law). To the contrary, the sole claim addressed by Newman in opposing the motion for summary judgment is a claim that the force employed by Green to effect the arrest was excessive; specifically, Newman alleges that he suffered "permanent" damage to his hands and/or wrists and/or thumb as a result of the excessive tightness of the handcuffs.

## III

All claims of use of excessive force during an investigatory stop, arrest, or other seizure are governed by the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The objective reasonableness test requires careful attention to circumstances of the particular case, *i.e.,* the severity of the crime under investigation, whether the suspect poses an immedi-

ate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or is attempting to evade arrest by flight. *Id.* The focus of the judicial examination is on the reasonableness of the officer's actions on the scene, in a particular situation, recognizing that officers are often called upon to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id. See also Greenidge v. Ruffin,* 927 F.2d 789 (4th Cir.1991).

■ The Supreme Court has held that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. As a general rule, officers conducting an arrest or investigatory stop are authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the arrest and/or stop. *United States v. Leshuk,* 65 F.3d 1105, 1109 (4th Cir.1995) (*citing United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)).

■ As a matter of law, a reasonable jury could not conclude that defendant Green employed excessive force in obtaining Newman's compliance that he submit to arrest. Most tellingly, Newman has produced no medical records to support his claim that he was brutally beaten or that he has suffered a "permanent" injury. Indeed, the sole evidence of Newman's injury is his own subjective assertions that while the "scars" on his hands have cleared up, he has nevertheless continued to suffer pain and "numbness" in his body from the encounter. This evidence is woefully inadequate to sustain constitutional claim of excessive force. Whatever the subjective reasons plaintiff had for attempting to resist arrest, he was not privileged to do so.

*See Martin v. Gentile,* 849 F.2d 863, 869 (4th Cir.1988) ("The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody."). Newman has failed to project evidence that Green's response to his resistance exceed the bounds of objective reasonableness.

Defendant has discussed at length the wealth of Supreme Court and Fourth Circuit authority dealing with excessive force claims and, specifically the need for a plaintiff to show more than an insubstantial injury to sustain an excessive force claim, such as alleged injuries arising from "tight handcuffs." *See, e.g., Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Brown v. Gilmore,* 278 F.3d 362, 369 (4th Cir.2002); *Carter v. Morris,* 164 F.3d 215, 219 n. 3 (4th Cir. 1999). Rather than attempt to distinguish these cases or to show a substantial reason why a different outcome is appropriate here, plaintiff *ignores* this authority and simply devotes a mere two and one half pages of his opposition memorandum to a generalized discussion of the "objective reasonableness" test, a discussion capped by the altogether vacuous assertion that Newman was "a cooperative suspect."

■ Newman's approach to the legal precedent is simply confirmation of the paucity of any evidence sufficient to sustain a federal constitutional claim against Green. Consequently, summary judgment shall be granted in favor of defendant Green on the excessive force claim (and any other federal claim lurking within the obtuse complaint). Moreover, as plaintiff has failed to show that defendant Green committed a constitutional violation, neither the entity defendants nor supervisory defendants mentioned in the complaint may be held liable to Newman because an award of damages against a municipality

based on the actions of its officers is not available unless the officer's conduct amounted to a constitutional injury. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("[N]either *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); *S.P. v. City of Takoma Park,* 134 F.3d 260, 274 (4th Cir.1998) (a municipality "necessarily is not liable for any alleged injuries" where "no constitutional violation occurred"). An order follows.

## ORDER

For the reasons stated in the accompanying memorandum, it is this 29th day of April, 2002, by the United States District Court for the District of Maryland, ORDERED

(1) That the plaintiff's motion to strike defendant's motion for summary judgment is DENIED; and it is further ORDERED

(2) That the defendants' motion for summary judgment is GRANTED and JUDGMENT IS ENTERED IN FAVOR OF ALL DEFENDANTS IN CASE NO. AMD 01–1906 AS TO ANY AND ALL CLAIMS ARISING UNDER FEDERAL LAW; and it is further ORDERED

(3) That THE CLERK SHALL RE-OPEN CASE NO. AMD 01–3825 AND ENTER JUDGMENT IN FAVOR OF DEFENDANT "STATE OF MARYLAND" THEREIN AGAINST PLAINTIFF; and it is further ORDERED

(4) That in CASE NO. AMD 01–1906, ALL CLAIMS ARISING UNDER STATE LAW ARE DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION; and it is further ORDERED

(5) That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ. 58.

(6) That the Clerk of the Court CLOSE THESE CASES and TRANSMIT a copy of this Order and the foregoing Memorandum to counsel of record.