**Merle T. WAGNER, Plaintiff–Appellee,**

v.

**Richard J. WHEELER, Defendant–Appellant,**

**and**

**Harford County Government, Defendant.**

No. 91–2288.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1992.

Decided Dec. 1, 1993.

---

Jefferson Lee Blomquist, argued (Emory A. Plitt, Jr. and Stephen W. Lutche, on brief), Harford County Dept. of Law, Bel Air, MD, for defendant-appellant.

Norris Carlton Ramsey, Baltimore, MD, argued (Gary N. Bowen, on brief), for plaintiff-appellee.

Before WIDENER and HAMILTON, Circuit Judges, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

In this action arising under 42 U.S.C. § 1983, Richard J. Wheeler appeals from an order of the United States District Court for the District of Maryland denying his motion for summary judgment. Wheeler sought summary judgment on the grounds that the doctrine of qualified immunity shielded him from liability for the conduct alleged in the complaint. The district court denied his motion and held that a factual dispute remained for resolution at trial. We are of opinion that the plaintiff-appellee Merle T. Wagner has failed to adduce evidence from which a jury could reasonably find that Wheeler's

conduct violated Wagner's clearly established federal constitutional rights. Accordingly, we reverse and remand for entry of judgment in favor of Wheeler on the Section 1983 claims. The remaining state law claim also is remanded to the district court as will be mentioned later.

## I

Wagner was an employee of the Division of Facilities and Operations of the Department of Public Works of Harford County, Maryland (the Division). Wheeler was Wagner's immediate supervisor and Chief of the Division which he had been made head of in early 1983. Wagner first came to the attention of Wheeler's supervisor, Mrs. Georgia Hodsdon, the county Director of Administration, while Wagner was a prisoner in the Harford County Detention Center. Mrs. Hodsdon was impressed with Wagner's work as a prisoner and therefore arranged to give him a job with the Division upon his release in the Fall of 1984.

Though Wagner's job performance apparently was satisfactory for a time, the record reflects that his employment with the county became rather turbulent beginning probably in early 1986. As we shall examine more thoroughly below, the evidence adduced at a county administrative proceeding indicated that Wagner's employment between 1985 and 1988 was marked by increasingly serious infractions of work rules, incidents of insubordination and conflict with his supervisors, Wheeler included, and generally substandard work performance. Though the parties, of course, dispute the causes, it is undisputed that in April, 1988, in accordance with termination procedures established by Harford County ordinance, Wheeler, at the instance of Mrs. Hodsdon, recommended to Mrs. Hodsdon and the county Personnel Officer, Mrs. Christine Coudon, that Wagner be fired. See Harford County Code § 38–38D. Mrs. Hodsdon and Mrs. Coudon concurred with that recommendation and thus Wagner was granted a pre-termination hearing on

April 22, 1988, where he was afforded an opportunity to show Mrs. Coudon why he should not be fired. Following that hearing Mrs. Coudon, Mrs. Hodsdon, and Richard G. Herbig, an attorney on the county's legal staff, determined that Wagner had failed to establish that his termination was not warranted and, therefore, Wagner was terminated effective April 22, 1988.

Wagner then exercised his right to appeal his termination to the county Personnel Advisory Board, a three-member body created by the Harford County charter to hear such appeals and perform other employment-related supervisory and policy tasks for the county. See Harford County Charter §§ 606–607. Wagner's hearing before the Board commenced on July 6, 1988, and ran at length, resulting in a transcript of some 520 pages. It was open to the public. At the hearing Wagner was represented by counsel, called witnesses to testify in his behalf, and cross examined witnesses testifying on behalf of the county. Following the completion of the hearing, on August 8, 1988, the Board affirmed the Personnel Officer's decision to terminate Wagner.[1] Unsatisfied with the outcome of the county administrative proceedings, Wagner turned to the federal courts for relief. On August 29, 1990, Wagner filed suit against Wheeler and Harford County in the United States District Court for the District of Maryland. The complaint sought damages under 42 U.S.C. § 1983 on the grounds that Wagner had been discharged in violation of his rights under the first and fourteenth amendments to the United States Constitution and that he had been subjected to verbal abuse and harassment in violation of his federal constitutional rights. The complaint further alleged claims under the state tort theories of intentional infliction of emotional distress and abusive discharge. After some procedural maneuvering not relevant here, Wagner pressed only two claims,

---

1. The Board stated, in a letter to Wagner's attorney, that

  [t]he testimony was so conflicting, regarding the various projects Mr. Wagner was assigned, the Board had great difficulty sorting out the true facts in this case. However, as testimony was presented it became clear that Mr. Wagner was insubordinate to his superiors on numer-

ous occasions and did engage in conduct detrimental to the efficiency of the Facilities and Operations Division.
  His insubordination and inability to accept authority were sufficient to warrant termination. Therefore, M. Thomas Wagner's appeal is denied.

both only against Wheeler individually: the Section 1983 claim and the state-law intentional infliction of emotional distress claim. Harford County is not a party to this appeal, all claims against the county having been dismissed with prejudice with the agreement of plaintiff Wagner.

Wagner identifies two factual bases for the instant suit. His primary contention is that Wheeler brought about his termination not on the legitimate grounds of poor performance and insubordination, but rather in retaliation for Wagner's actions in reporting to Maryland environmental officials two alleged violations of environmental regulations committed by the Division. Specifically, Wagner alleged that in early 1988 he had reported to environmental officials that Division employees were engaged in the improper and illegal removal of asbestos from county buildings, and that a malfunctioning county sewer system had caused pollution to be unlawfully discharged into a river. Thus, goes the argument, Wheeler's decision to recommend Wagner's discharge was in retaliation for those reports and thereby violated Wagner's right to free speech under the first and fourteenth amendments.

The balance of Wagner's claims arise out of certain verbal harassment that Wheeler allegedly inflicted upon Wagner on one or more occasions during his employment with the Division. Wagner, a combat veteran of the Vietnam conflict, alleged that Wheeler exacerbated the Vietnam-related emotional stress that Wagner felt by calling him a "Vietnam baby-killer, murderer, and rapist." Wagner's complaint claims that these epithets constituted a Section 1983 violation in that they "caused him to be discharged" and were made with the intent of depriving him "of his right to freedom of speech, the right to bear arms, and the right to petition" government, as well as his rights to due process and equal protection of the laws. This alleged verbal abuse also formed the basis for the state-law claim of intentional infliction of emotional distress.

Wheeler filed an answer to the complaint wherein he denied that his recommendation that Wagner be terminated was motivated by Wagner's reports to environmental authorities. Wheeler further denied that he had made any of the abusive statements alleged in the complaint. More importantly for present purposes, Wheeler raised the affirmative defense of qualified immunity and soon thereafter moved for summary judgment on that ground.

Wheeler accompanied his motion for summary judgment with extensive excerpts from discovery depositions and affidavits of various county personnel familiar with Wagner's employment history, as well as a transcript of the proceedings before the county board. The thrust of Wheeler's qualified immunity argument was, and indeed is before this court, that he did not violate Wagner's "clearly established constitutional right" to free speech in that Wagner's reports of environmental infractions were not the cause of his termination. See *Siegert v. Gilley*, 500 U.S. 226, ——, 111 S.Ct. 1789, 1792, 114 L.Ed.2d 277 (1991); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977). Wheeler argued that because the overwhelming evidence established that Wagner's long history of poor performance and insubordination in fact brought about his termination, and because Wheeler himself played only a small role in the termination process, Wagner could not produce evidence from which a jury could reasonably find in his favor. Wagner in turn opposed the motion for summary judgment on grounds that the facts were sufficiently in dispute to raise a jury question on the issue of causation. In opposition he claimed there was evidence which tended to show that Wagner's termination in fact was in retaliation for his whistleblowing activity.

By letter order dated October 25, 1991, the district court denied Wheeler's motion. The court stated only, and without further explanation, that it was "satisfied that, at this time, there is a factual issue to be resolved at the time of trial which prevents granting summary judgment in this case." Wheeler then filed a timely notice of appeal from that order which was a final order for purposes of 28 U.S.C. § 1291 under the authority of *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

## II

### A

■ We, of course, review the grant or denial of a motion for summary judgment *de novo*, applying the same standard as did the district court. See, e.g., Fed.R.Civ.P. 56(c); *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1127–28 (4th Cir.1987). A movant is entitled to summary judgment where the record, taken as a whole, could not lead a rational trier of fact to find for the non-movant. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

For ease of analysis we will consider first Wagner's claim under Section 1983 that Wheeler caused him to be fired in retaliation for his exercise of his first amendment right to free speech. We then shall address his Section 1983 and state claims related to Wheeler's alleged verbal harassment.

### B

■ Since the Supreme Court's decisions in *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), it has been clear that a state government entity may not deprive a person of valuable employment benefits in retaliation for that person's exercise of his first amendment rights. Plaintiffs asserting such first amendment retaliatory discharge, or whistleblower, claims must establish three elements to state a claim under Section 1983: (1) "that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern," *Huang v. Board of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir.1990); (2) "that the alleged retaliatory action deprived him of some valuable benefit," *Huang*, 902 F.2d at 1140; and (3) that there was a causal relationship between the protected expression and the retaliatory action. See *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 576; *Givhan v. Western Line Consol. Sch. Dist.*,

439 U.S. 410, 416–17, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979).

■ For purposes of this appeal we may assume, without deciding, that Wagner's claims satisfy the first two elements of the foregoing inquiry. We then focus our attention on the third requirement, that of causation. By its decisions in the *Mt. Healthy* and *Givhan* cases, the Supreme Court has allocated the burden of proof regarding causation between the parties in a first amendment discharge case in the following manner. The initial burden lies with the plaintiff, who must show that his protected expression was a "substantial" or "motivating" factor in the employer's decision to terminate him. See *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. If the plaintiff successfully makes that showing, the defendant still may avoid liability if he can show, by a preponderance of the evidence, that the decision to terminate the plaintiff would have been made even in the absence of the protected expression, more simply, the protected speech was not the but for cause of the termination. See *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *Givhan*, 439 U.S. at 416–17, 99 S.Ct. at 697. This causation requirement was the result of the Court's desire to prevent a government employee from insulating himself from legitimate termination simply by engaging in protected speech. According to the Court, a job "candidate ought not to be able, by engaging in such [first amendment-protected] conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of that decision." *Mt. Healthy*, 429 U.S. at 286, 97 S.Ct. at 575.

■ Our review of the record in this case has convinced us that Wagner has failed to carry his initial burden of proving that his reports of environmental law violations were a substantial factor in Wheeler's decision to recommend his dismissal.[2] We are of opin-

---

**2.** We note that our disposition of this case has not in the strictest sense decided the doctrine of qualified immunity, as it is clear that, as a general matter, it is possible for a government official to violate an employee's established constitutional rights by bringing about his termination in retaliation for the employee's exercise of his right to free speech. An interlocutory appeal is autho-

ion that Wagner has failed to muster any real evidence that the ostensibly legitimate reasons given for his termination were pretextual. The only argument Wagner advances to show that his firing was in retaliation for his reports of environmental problems concerns the timing of those reports and the timing of certain reprimands he received for poor performance of his duties.[3] This temporal proximity, however, is simply too slender a reed on which to rest a Section 1983 retaliatory discharge claim. Even if we accept Wagner's thesis that his reports of violations in some way irritated Wheeler and caused him to monitor Wagner's performance more closely, we still cannot say that Wagner has carried his burden under *Mt. Healthy* of establishing that his protected activity was a "substantial" or "motivating" factor in his dismissal. As we have already related, the Court has made clear that a first amendment violation does not result "simply because the protected conduct makes the employer more certain of the correctness" of the decision to terminate an employee. *Mt. Healthy*, 429 U.S. at 286, 97 S.Ct. at 575.

Thus, we find that the district court erred in holding that Wagner had presented sufficient evidence to carry his burden of showing causation as set out in the *Mt. Healthy* decision.

In the alternative, even were we of opinion that Wagner had made the threshold showing of causation, we would be compelled to hold Wheeler entitled to summary judgment on the grounds that he has proved that Wagner's first amendment activity was not the but for cause of the termination decision. Both the transcript of the proceedings before the county board and the other documents supporting Wheeler's motion for summary judgment make clear that by the time of Wheeler's solicited or even directed recommendation to Mrs. Hodsdon, Wagner's job performance had become so dismal that his environmental reports played no substantial role in the decision to fire him. Given the extensive list of infractions and incidents of insubordination, we must decline to second-guess either Wheeler's recommendation that Wagner be fired or the Board's affirmance of his firing.[4] Moreover, we must emphasize

rized only for consideration of the district court's denial of Wheeler's claim of qualified immunity. See *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

We are of opinion, however, that where an interlocutory appeal is made possible by the denial of a colorable claim of qualified immunity, this court should consider any issue fairly presented by the record which relates to that issue. Our opinion in this regard accords with the decisions of the few courts that have considered the point. See *Wright v. South Arkansas Regional Health Ctr., Inc.*, 800 F.2d 199, 202–03 (8th Cir.1986) (collecting cases).

In this respect, *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), is indistinguishable from the case at hand for all practical purposes. In *Siegert,* a case in which the Court considered the defense of qualified immunity in an interlocutory appeal, the Court decided that the defense was good because plaintiff Siegert had "failed to establish the violation of any constitutional right at all." 500 U.S. at ——, 111 S.Ct. at 1794. Siegert had failed to allege the violation of a clearly established constitutional right, thus the defense of qualified immunity was well taken. The only difference between *Siegert* and our case is that *Siegert* dealt with the allegations in a complaint, while this case addresses failure of proof.

3. Wagner testified before the Board that he reported the improper discharge of sewage from a county building into a storm drain on the morning of March 10, 1988, and that he received a

written employee warning that same afternoon. Our reading of the record suggests that the warning to which Wagner here refers on March 10, 1988 was for Wagner's failure properly to secure a ceiling hatch leading to the attic in a Harford County building, a condition which constituted a fire hazard and which had been reported to Wheeler on March 7, 1988 by other county employees.

Similarly, he testified that he notified environmental authorities of the presence of asbestos in a county building on February 26, 1988, and that he received another written warning three days later, on February 29, 1988. Though the record regrettably is not entirely clear on the point, it appears that this warning was for failure to follow Wheeler's directions in connection with the removal and reconstruction of restrooms near the office of the county Election Supervisor who complained about the work.

4. We need not recount in detail every incident that formed the basis for the decision to fire Wagner; they are comprehensively cataloged in Wheeler's motion for summary judgment and in his brief before this court. Generally, however, the incidents include violations of county policy regarding the personal use of county automobiles, inadequate supervision of subordinate employees, abrasive attitude, substandard quality of work, and insubordination.

We further note that the record shows that Wheeler took up for Wagner until the very end

that Wagner was not terminated simply through the actions or at the whim of Wheeler alone; to the contrary, the decision to fire Wagner was upheld after review by two bodies, first the more informal pretermination review by Mrs. Hodsdon, Mrs. Coudon, and Herbig, and then the lengthy, formal evidentiary proceeding before the Board.[5] Neither proceeding is alleged to have been fundamentally unfair or tainted with retaliatory motive; the only real allegations in the complaint are directed at Wheeler, the sole defendant in the case. Whatever Wheeler's private motives might have been, his participation in the hearings was benign in that he in no way suggested that Wagner's termination was warranted because of the reports of environmental violations. Thus, the Board's decision simply cannot be said, on this record, to have been tainted by any private retaliatory intent on the part of Wheeler. Accordingly, we will remand for dismissal Wagner's Section 1983 retaliatory discharge claim.

## C

■ Wagner's second group of claims arises out of Wheeler's alleged verbal abuse of Wagner. Specifically, Wagner alleges that on more than one occasion Wheeler called Wagner, a veteran of the Vietnam conflict, a "Vietnam baby-killer, murderer, and rapist." Wagner's Section 1983 claims based on these statements take two forms: he alleges first that this alleged harassment in some way caused his termination; and second, that the offensive statements themselves somehow violate his rights under the first, second, and fourteenth Amendments to the Constitution. Wagner further claims that these statements are actionable as intentional infliction of emotional distress under Maryland law. There being no independent jurisdictional basis for this state claim, Wagner invokes the supplemental or pendent jurisdiction of the district court. See 28 U.S.C. § 1367; *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

We reject Wagner's claim that this verbal harassment, if it indeed occurred, would amount to a constitutional deprivation. His claim that these comments in some way caused him to lose his job is puzzling in that there is no issue of constructive discharge in this case, and there is no explanation or support in the evidence as to just how the alleged harassment caused him to lose his job.

We likewise find no freestanding constitutional violation in this verbal abuse. Though the alleged statements are entirely inappropriate, in the workplace or anywhere else,

and actually delayed Wagner's dismissal on at least two occasions by dissuading other county officials from attempting to terminate Wagner. Habern Freeman, then the County Executive of Harford County, testified by affidavit that once in 1986 and again in 1987 he informed Wheeler that Wagner's poor performance warranted dismissal. On both occasions, according to Freeman, Wheeler persuaded him to give Wagner another chance. The same applies to Mrs. Hodsdon who had to suggest Wheeler's recommendation twice before it was made.

5. Indeed, in a memorandum opinion dismissing Wagner's state claim of abusive discharge, the district court correctly noted that

> [a]s a matter of law, Wheeler's power was limited to making a request for discharge to the Personnel Officer. The Personnel Officer issues a termination letter and advises all terminated employees of their right to appeal the termination to the Personnel Advisory Board. The Personnel Advisory Board is the final decision [sic] with respect to an employee's termination. It is undisputed that Wheeler request-

ed Wagner be discharged and did not dismiss Wagner himself. Wagner was discharged by the County Personnel Officer and the Director of Administration. Wagner appealed to the Personnel Advisory Board, which affirmed the dismissal. Additionally, [Wagner] failed to allege in his Complaint that Wheeler played a dominate [sic] role in the affairs of the County or that he exercised control over the formulation of the discharge policies.... (citations omitted).

Though we do not rely on the point, we are of opinion that Wheeler's legal inability directly to fire Wagner raises a problem of causation perhaps even more fundamental than that on which we base our opinion today. We doubt very much whether Wagner, even had he established that Wheeler's recommendation was in retaliation for protected expression, could recover against Wheeler after the termination decision was reviewed and affirmed by two different bodies, one of which, the Board, is comprised solely of bipartisan citizens. See Harford County Charter § 606. Under these circumstances it hardly can be said that Wheeler's conduct was the factual or legal cause for Wagner's dismissal.

the fact remains that the law does not convert every potentially tortious act into a deprivation of constitutional rights simply because the alleged tortfeasor happens to be a government actor. See, e.g., *Santiago de Castro v. Morales Medina*, 943 F.2d 129 (1st Cir.1991); *Pittsley v. Warish*, 927 F.2d 3 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991); *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir.1989); *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979). So far as reputation may be concerned, *Siegert* explicitly held that there is a "... lack of any constitutional protection for the interest in reputation." 500 U.S. at ——, 111 S.Ct. at 1794. Accordingly, because Wagner has failed to establish that the alleged verbal abuse violated any of his clearly established constitutional rights, we remand for entry of judgment in favor of Wheeler these Section 1983 claims.

Our disposition of the federal claims in this case leaves only Wagner's state-law claim of intentional infliction of emotional distress. We express no opinion with respect to that claim at this time and remand the same to the district court to ascertain in the first instance whether or not supplemental jurisdiction should be exercised, and, if so, follow whatever procedure may be appropriate.

To summarize, the order of the district court appealed from is accordingly reversed, and the case is remanded to the district court to enter judgment in favor of Wheeler on all the Section 1983 claims and to take action with respect to the remaining state claim as above set forth.

*REVERSED AND REMANDED WITH INSTRUCTIONS.*