56 F.3d 60
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 AETNA CASUALTY & SURETY COMPANY, Plaintiff-Appellee,
v.
Carol CLAYTON, an individual; Carol Clayton, as
Administratrix of the Estate of James F. Sullivan, deceased,
and as Administratrix of the Estate of James F. Clayton,
deceased; Teresa D. Snyder, as Administratrix of the Estate
of Stephen William McKinney, deceased, and natural guardian
of Lysette D. McKinney and Joshua A. McKinney, infant
children of Stephen William McKinney, deceased; Andrew S.
Nason, as Ancillary Administrator for Robert J. LaGonterie
and Joseph H. Curran, Co-Administrators of the Estates of
Joseph R. Curran, Angela B. Curran and Kristin Curran,
deceased; Andrew S. Nason, as Ancillary Administrator for
Robert J. LaGonterie, Administrator of the Estate of Lisa M.
Curran, deceased; Andrew S. Nason, as Ancillary
Administrator for Joseph H. Curran, Administrator of the
Estate of Joseph M. Curran, deceased; Robert J. Lagonterie,
an individual; Joseph H. Curran, an individual,
Defendants-Appellants.
and
DOUBLE B AUTO SALES, INCORPORATED, a corporation; Manuel A.
Cruzado, Jr., an individual; West Virginia Department of
Highways, a State Agency; Pamela Radcliff, guardian of
Michael Radcliff, Defendants.
 No. 94-1885.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1995.
Decided June 5, 1995.
 
 ARGUED: Brent E. Beveridge, Fairmont, WV, for Appellants. James Michael Brown, BROWN, LEVICOFF & MCDYER, Beckley, WV, for Appellee. ON BRIEF: Jeffrey Todd ones, HUNT, LEES, FARRELL & KESSLER, Charleston, WV, for Appellants. Avrum Levicoff, ANSTANDIG, LEVICOFF & MCDYER, Pittsburgh, PA, for Appellee.
 S.D.W.Va.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Defendants-Appellants, administrators of the estates of eight individuals who died in a multi-vehicle accident and other surviving family members of the decedents, appeal the district court's decision that Plaintiff-Appellee Aetna Casualty & Surety Company has exhausted its coverage liability for the accident by depositing $750,000 into the registry of the district court. We affirm.
 
 I.
 
 2
 This case arises out of an accident that occurred on July 26, 1990, when a motor carrier tractor-trailer owned by Double B Auto Sales (Double B) and operated by Manuel A. Cruzado, Jr., collided with two automobiles at a highway construction zone on Interstate 79 in Braxton County, West Virginia. The eight individuals who occupied the two automobiles died in the accident. After the accident, the estates of the eight decedents instituted three separate civil actions in West Virginia state court against Double B, Cruzado, and numerous other defendants.
 
 
 3
 At the time of the accident, Double B and Cruzado were insured by Aetna Casualty & Surety Company (Aetna) under a policy with a liability limit of $750,000 per accident. On October 14, 1992, Aetna elected to interplead $750,000 into the registry of the United States District Court in the Southern District of West Virginia pursuant to 28 U.S.C. Sec. 1335. Aetna then commenced this instant action to obtain declaratory relief concerning its coverage obligations. Specifically, Aetna requested that the district court determine whether the victims' deaths resulted from a single "accident," under the meaning of the Aetna policy. Because the material facts were not in dispute, the district court agreed to consider the parties' cross motions for summary judgment. In an order entered on March 17, 1994, the court granted Aetna's summary judgment motion. The court concluded that the entire incident in question constituted one accident, and the court rejected Appellants' alternative argument that, regardless of the number of "accidents," the Interstate Commerce Commission (ICC) endorsement to the Aetna policy obligated Aetna to the policy limit of $750,000 for each final judgment ultimately rendered against its insureds in the three actions pending in West Virginia state court. The district court therefore declared that Aetna has exhausted its liability coverage owed to Double B and Cruzado for the accident by depositing $750,000 into the registry of the court.
 
 II.
 
 4
 The following undisputed facts illustrate the details surrounding the fatal accident. On July 16, 1990, Cruzado left Buffalo, New York, in a motor carrier tractor-trailer owned by Double B. Between July 16 and July 25, Cruzado made a series of deliveries and pick-ups for Double B customers along the Eastern seaboard. On July 25, Cruzado left Florida heading northward in the motor carrier, which was carrying eight automobiles loaded and tied down by Cruzado. On July 26, 1990, while traveling at an unsafe speed, Cruzado approached a highway construction work zone on a bridge near Exit 62 on Interstate 79. As the traffic merged into one lane at the construction site, Cruzado was unable to slow down sufficiently, and the motor carrier collided with a 1979 Dodge Aspen, which was towing a small utility trailer. The Aspen was occupied by James Sullivan, the driver, and by Stephen McKinney and James Clayton. The initial impact between the motor carrier and the Aspen caused the Aspen's trailer hitch to break, scrape the ground, and puncture the gas tank of the Aspen as it continued forward. Soon after the initial impact, the leaking fuel from the gas tank ignited.
 
 
 5
 The motor carrier continued to push the Aspen for approximately 200 feet across the highway bridge until the right front of the Aspen struck the left rear of a 1988 Dodge Colt, occupied by Joseph and Lisa Curran and their three children. The collision caused both automobiles to rotate in a manner that enabled the motor carrier to overtake and strike the right rear of the Colt. All three vehicles continued for an additional 100 feet and ultimately came to rest when they impacted West Virginia Department of Highways (DOH) construction equipment. The Colt stopped when it became wedged between the motor carrier and a DOH dump truck parked on the bridge. The motor carrier and the Aspen continued forward and stopped when the front support of the motor carrier's overhead ramp struck the dump truck and the Aspen was pushed into a DOH broom tractor. After all the vehicles came to a rest, a 1990 Lincoln Continental, which was attached on the carrier's overhead ramp, fell from the carrier and landed on top of the Aspen. The Lincoln's fall proximately resulted from the fact that Cruzado had negligently secured the Lincoln on the carrier in Florida between July 23 and 25, 1990. Immediately after the Lincoln fell on the Aspen, a fireball explosion occurred.
 
 
 6
 Due to the impact from the fall of the Lincoln, the roof of the Aspen collapsed and Clayton, who was in the back seat, suffered multiple head injuries. Because of the prompt emergency response by the state police, fire departments, and rescue personnel, the National Transportation Safety Board concluded, "[I]f the Lincoln on the head ramp had been properly restrained, the roof of the Aspen would not have been crushed, and one or more of the occupants of the Aspen may have survived by escaping or being extricated by rescuers from the windows or door on the left side of that vehicle." Instead, all three occupants of the Aspen died from heat trauma. All five members of the Curran family in the Colt similarly died from heat trauma.
 
 III.
 
 7
 This Court reviews the grant of summary judgment de novo, applying the same standard as did the district court. Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir.1993). Under this standard, the facts and the inferences to be drawn from the facts must be viewed "in the light most favorable" to the nonmoving party. Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). At the same time, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 A.
 
 8
 We first consider Appellants' primary argument that, under New York law,[1] the collision on July 26, 1990, constituted two "accidents" within the meaning of the applicable Aetna policy. The Aetna policy provides liability coverage for "bodily injury" or "property damage" caused by an "accident." The policy defines "accident" to "include[ ] continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.' " Joint Appendix (J.A.) 28. The policy limits the amount of liability coverage by the following language:
 
 
 9
 Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.
 
 
 10
 All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."
 
 
 11
 J.A. 24. The declarations page states that, regarding liability coverage, "The Most We Will Pay For Any One Accident or Loss" is $750,000. J.A. 18.
 
 
 12
 The most complete discussion of New York law concerning whether a multiple-vehicle collision constitutes a single accident occurs in Hartford Accident & Indemnity Co. v. Wesolowski, 305 N.E.2d 907 (N.Y.1973). In Wesolowski, the New York Court of Appeals adopted the "event" test to determine whether a collision is one "occurrence" or "accident" for insurance coverage purposes.[2] Under this test, "there is one accident if there has been but a single 'event of an unfortunate character that takes place without one's foresight or expectation,' a single 'unexpected, unfortunate occurrence.' " Id. at 910 (emphasis in original) (quoting Arthur A. Johnson Corp. v. Indemnity Ins. Co. of N. Am., 164 N.E.2d 704, 707 (N.Y.1959)); see also Uniroyal, Inc. v. Home Ins. Co., 707 F.Supp. 1368, 1381-87 (E.D.N.Y.1988) (applying event test under New York law to determine number of occurrences under general liability insurance policy). Applying this test to the facts in the case, the court concluded that there was a single occurrence because the two vehicular collisions "occurred but an instant apart" and "[t]he continuum between the two impacts was unbroken, with no intervening agent or operative factor." Wesolowski, 305 N.E.2d at 910.
 
 
 13
 Appellants conceded before the district court that it is reasonable to assume that only thirty seconds lapsed between the motor carrier's initial impact with the Aspen and the Lincoln's fall onto the Aspen's roof. Appellants nevertheless argue as they did before the district court that, under the event test, two accidents occurred on July 26, 1990, because the continuum between the initial impact and the fall was broken by Cruzado's separate negligent act in failing to properly secure the Lincoln on the motor carrier some days prior to July 26.
 
 
 14
 We agree with the district court that the New York Court of Appeals would not view the disengagement and fall of the Lincoln as breaking the continuum of events set in motion when the motor carrier initially struck the Aspen. Applying the reasoning in Wesolowski, we hold that the undisputed evidence shows that "the continuum between the two impacts was unbroken, with no intervening agent or operative factor."[3] See Wesolowski, 305 N.E.2d at 910. As the district court determined, no evidence indicates that Cruzado ever regained control of the motor carrier after it initially struck the Aspen. Furthermore, the chain of events set in motion when Cruzado collided with the Aspen were close in proximity of time and space and were not interrupted or substantially changed by Cruzado's negligent tiedown.
 
 
 15
 Appellants emphasize that the negligent tiedown potentially resulted in additional injuries, which might have been avoided had Cruzado properly secured the Lincoln. This link to additional injuries, however, does not alter that fact that all the injuries ultimately stemmed from Cruzado's initial impact with the Aspen, which caused the unbroken continuum of events resulting in the disengagement of the Lincoln. Although the negligent tiedown occurred some days prior to the collision, it resulted in an aggravation of the injuries only due to the chain of events set in motion by the initial impact of the motor carrier and the Aspen. We thus conclude that the collision constituted a single "accident" within the meaning of the Aetna policy language, as construed under New York law.
 
 B.
 
 16
 We now turn to address Appellants' alternative argument that, regardless of the number of "accidents" on July 26, 1990, the terms of the ICC Endorsement to the Aetna policy and the remedial nature of the Motor Carrier Act of 1980 compel a determination that the Aetna is obligated to the policy limit for each judgment rendered against its insureds. In order to obtain a permit from the ICC to operate a motor carrier, Double B was required under the Motor Carrier Act of 1980, 49 U.S.C. Sec. 10927(a)(1), to file a "bond, insurance policy, or other type of security" approved by the ICC in a prescribed amount. The Act provides that "[t]he security must be sufficient to pay, not more than the amount of the security, for each final judgment against the carrier for bodily injury to, or death of, an individual...." Id. The ICC endorsement Aetna supplied to Double B conforms with the prescribed form set forth in 49 C.F.R. Sec. 387.15, Illustration I, and includes the following language:
 
 
 17
 It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.
 
 
 18
 J.A. 126 (emphasis added). The ICC endorsement also defines "accident" in similar language as the Aetna policy[4] and states that Aetna "shall not be liable for amounts in excess of $750,000 for each accident." Id. Furthermore, the endorsement contains the following limitation:
 
 
 19
 The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments from any other accident.
 
 
 20
 Id. (emphasis added).
 
 
 21
 Appellants argue that the ICC endorsement must be construed as obligating Aetna to pay up to the policy limit of $750,000 for each final judgment obtained against Double B and/or Cruzado in the underlying state court actions. Appellants contend that their interpretation is supported by the fact that financial responsibility statutes, such as the Motor Carrier Act, are liberally construed in favor of the public and against motor carriers and their insurance carriers. Under Appellants' argument, Aetna would be potentially liable for five final judgments because Appellants seek five judgments in their three lawsuits in state court.[5] Given the clear language of the endorsement, we find that Appellants' argument lacks merit. As quoted above, the endorsement expressly states that the policy limits "apply separately to each accident." Id. (emphasis added). Any liberal interpretation in favor of coverage cannot change the fact that the plain language of the endorsement does not make the policy limits available for each separate judgment when those judgments all stem from the same accident, as in this case. As the district court reasoned, the final judgment provision in the endorsement merely solidifies the insurer's obligation to pay up to the policy limits any final judgment obtained for "each accident," notwithstanding the insured's financial condition or the insurer's payment for any other, separate accident. We therefore conclude that the ICC endorsement does not alter the judgment that Aetna's total obligation for the accident in question is $750,000.
 
 IV.
 
 22
 For the foregoing reasons, we affirm the decision of the district court.
 
 AFFIRMED
 
 
 [1]
 The parties have agreed that New York law governs the interpretation and application of the Aetna policy
 
 
 [2]
 The policy at issue in Wesolowski limited coverage to $20,000 per "occurrence." Wesolowski, 305 N.E.2d at 909. The Wesolowski court reasoned that there was no practical distinction between the terms "occurrence" and "accident" for purposes of interpreting the policy language at issue. Id. at 910. The parties in this case have not distinguished the terms, and this Court agrees with the district court that "accident" should be interpreted as the court interpreted "occurrence" in Wesolowski
 
 
 [3]
 Although Appellants stress that Cruzado's negligent tiedown constitutes a separate proximate cause leading to the disengagement of the Lincoln from the motor carrier, such issues of causation are not determinative under the event test, which New York law applies. See Wesolowski, 305 N.E.2d at 910
 
 
 [4]
 The endorsement specifically provides:
 ACCIDENT includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.
 J.A. 126.
 
 
 [5]
 Appellants cannot seek further damages from Double B because the company is now bankrupt and dissolved