**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KERMIT R. MCGINNIS,
Plaintiff-Appellant,

v.                                                                          No. 96-2571

CONSOLIDATED RAIL CORPORATION,
Defendant-Appellee.

KERMIT R. MCGINNIS,
Plaintiff-Appellee,

v.                                                                          No. 97-1009

CONSOLIDATED RAIL CORPORATION,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-95-1397-L)

Argued: July 9, 1997

Decided: August 12, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge,
and BOYLE, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** G. Sander Davis, DAVIS & MYERS, Philadelphia, Pennsylvania, for Appellant. Frederick Lewis Kobb, WRIGHT, CONSTABLE & SKEEN, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** James W. Constable, Tracey D. King, WRIGHT, CONSTABLE & SKEEN, L.L.P., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff Kermit McGinnis appeals from the district court's grant of summary judgment for defendant Consolidated Rail Corporation ("Conrail") in this action brought under both the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (FELA) and the Federal Safety Appliance Act, 45 U.S.C. § 1 et seq. (FSAA). Reviewing the district court's grant of summary judgment de novo, Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir. 1993), we affirm.

I.

Kermit McGinnis was a train brakeman for Conrail. On December 10, 1993, McGinnis, along with an engineer and a conductor, were trying to move 16 freight cars from one track to another. The engineer was driving an engine car, the engine car was connected to a cabin car, and the cabin car was in turn connected to a string of 16 freight cars. McGinnis and the conductor were riding in the back of the train.

While the freight cars were being pulled, the air in the train's braking system was flowing from the engine to the cabin, but there was no air flowing to the remaining 16 freight cars. This meant that the brakes in the engine and cabin cars were operational, while the

2

remaining brakes were inoperative. When the train stopped, McGinnis walked to the connection between the cabin and the first freight car in order to open the valve and permit air to fill the remaining brakes. When trains stop, there is normally some "slack action" which causes the cars without operational brakes to move back and forth due to momentum. After waiting some unknown period of time for the slack action to stop, McGinnis went in between the cabin car and the first freight car and attempted to turn on the air. While leaning over the coupler that connected the cabin and the freight car, McGinnis lost his balance and grabbed the coupler. The coupler moved and crushed his hand.

McGinnis brought suit for money damages against Conrail alleging first, that Conrail breached its duty of care under FELA by using a defective coupler and by disregarding its own safety regulations whose enforcement would have prevented plaintiff's injury, and second, that Conrail was strictly liable under the FSAA for employing a defective coupling mechanism. The district court granted defendant's motion for summary judgment on both causes of action, holding that there was no evidence that the coupler movement was due to any negligence or defect in the mechanism, and that there was no evidence that defendant's safety regulations -- if enforced -- would have prevented plaintiff's injury.

II.

We hold that summary judgment for Conrail on plaintiff's FELA claims was proper because plaintiff cannot point to any evidence in the record that any alleged negligence by Conrail caused plaintiff's injury. Although a FELA plaintiff may defeat summary judgment by meeting the "most lenient" burden, see Brown v. Baltimore & O. Railroad, 805 F.2d 1133, 1137 (4th Cir. 1986), the plaintiff must nonetheless create a genuine issue of material fact to support all of the elements of his cause of action. Based on our review of the record in this case, we conclude that appellant cannot satisfy this burden. We examine in order each of appellant's four possible theories of recovery under FELA.

Appellant's first theory of recovery is that Conrail was negligent for using a defective coupler. The district court granted summary

3

judgment for Conrail on this theory based upon the testimony of a safety inspector that the coupler was not defective. Appellant contends that this was error and that he has created an issue of material fact on his negligence theory by submitting affidavits of several Conrail employees who claim to have overheard the safety inspector mention that the coupler was in fact defective. We need not decide whether appellant's affidavits create an issue of fact regarding Conrail's negligence; even if Conrail did negligently maintain a defective coupler, appellant cannot establish that that defect caused his injury. In particular, because the inspector denies admitting to the alleged coupler defect, and because appellant's witnesses can do no more than testify that they overheard the safety inspector refer to the coupler as "defective," appellant cannot point to any evidence of the _type_ of defect to which the inspector admitted, nor can he point to any evidence tending to establish that _that_ particular defect caused his injury. Summary judgment is therefore appropriate because appellant has not created a genuine issue as to the fact that this alleged negligence caused his injury.

Appellant's second theory of recovery is that Conrail's negligent failure to enforce its "three point protection" safety regulation caused his injury. The "three point protection" plan is a three-step Conrail safety regulation designed to prevent train cars from moving while men are working on them. Appellant has presented evidence that Conrail knew that its employees were routinely ignoring the three point plan, and thus appellant may have created a jury question on Conrail's negligence under this theory. To defeat summary judgment, however, appellant must establish that the three point plan, if followed, would have prevented appellant's particular injury. Because the first step in the three point procedure is to apply the air brakes, and because McGinnis was injured in the process of activating the freight car brakes, the three point procedure could have prevented his injury only if the injury resulted from movement in the _cabin car_ or _engine_ (the only two cars with functioning brakes). Appellant concedes that he did not see the engine or cabin car move at the time of his injury, and affidavits of the only two eyewitnesses indicate that the cabin and engine cars remained stationary. Thus, appellant cannot point to any evidence in the record sufficient to create a genuine issue that Conrail's failure to enforce its "three point protection" regulation caused his injury.

4

Appellant's third theory of recovery is that Conrail negligently failed to enforce other (i.e. non-three-point-protection) safety regulations, including a regulation that forbade trainmen from leaning over couplers while activating the air brakes. We hold that appellant may not raise this theory of recovery in this court because it was waived in the district court below. This argument was never mentioned by appellant in his opposition to summary judgment; it was never mentioned by appellant in discovery or answers to interrogatories (even though Conrail tried to elicit all of plaintiff's theories); and it was not mentioned in appellant's original complaint. Appellant contends that it did not waive this argument because it argued below that Conrail negligently violated a safety regulation, namely the three point protection regulation. We conclude, however, that the argument that Conrail failed to enforce different safety regulations raises a different issue because it is based upon a different theory of negligence. Therefore, appellant has waived its theory based upon Conrail's alleged failure to enforce these particular safety regulations. This conclusion seems particularly appropriate in light of the number of safety regulations a large corporation like Conrail is likely to have in place.* Thus, were we to consider appellant's third theory of recovery, we would would run afoul of the general rule against consideration of issues raised for the first time on appeal. Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) (refusing to reverse summary judgment for defendant on the basis of an issue raised for the first time on appeal). While appellant asks that we excuse his waiver in order to avoid "plain error" or a "miscarriage of justice," we decline to invoke those narrow exceptions to the waiver rule, where, as here, appellant waived an ordinary negligence theory, and did so simply as a result of mere inaction.

Appellant's final theory of recovery is that Conrail's negligence should be inferred under the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur may be applied in FELA cases, so long as three conditions are satisfied: "(1) the injury for which the plaintiff seeks recovery must be of a kind that ordinarily does not occur in the

_____

*Although we are unable to tell from the record how many safety regulations Conrail actually has in place, we note that appellant alleges that Conrail negligently failed to enforce safety regulations numbered 1715(g), 1709, and 1721.

5

absence of negligence; (2) the injury must have been caused by some agency or instrumentality within the exclusive control of the defendant; and (3) the injury must not have been due to any contribution or voluntary activity on the part of the plaintiff." Stillman v. Norfolk & Western Railway Co., 811 F.2d 834 (4th Cir. 1987). Based upon our review of the record in this case, we reject appellant's contention that res ipsa loquitur be applied, because appellant cannot satisfy the third requirement. McGinnis concedes that he sustained his injury while he was reaching over and leaning against the coupler mechanism. This clearly constitutes "contribution or voluntary activity" by him. Appellant responds that Conrail is also negligent because, if it had enforced its safety regulations, McGinnis might not have reached over and leaned against the coupler. Even assuming for the sake of argument, however, that Conrail was partially at fault for failing to enforce its safety regulations, appellant still cannot defeat summary judgment because he does not deny that his injury was caused by "any contribution or voluntary activity," namely, his arguably negligent act of reaching over and leaning against the coupler.

III.

Under the FSAA, railroads are strictly liable for injuries to their workers caused by prohibited defects in covered "safety appliances." A coupling mechanism is a "safety appliance" within the meaning of the FSAA. 49 U.S.C. § 20302. Not all coupler defects are prohibited by the FSAA, however, and we hold that appellant's alleged defect -- whatever it may be -- is not covered by the FSAA because, as appellant concedes, it is not a defect affecting the ability of the coupler device automatically to couple and uncouple or remain coupled. See 49 U.S.C. § 20302 (1997) (requiring couplers to couple and decouple automatically). See also O'Donnell v. Elgin, 338 U.S. 384 (1949) (holding that FSAA requires that couplers remain coupled). Thus, the district court properly entered summary judgment for Conrail on appellant's FSAA claim.

CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

6