**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARK GILLEN; JOHN MORAN,
Plaintiffs-Appellees,

v.

WILLIAM R. HUGGINS, Individually
and as Sheriff of Anne Arundel
County,
Defendant-Appellant,

No. 94-2654

and

ANNE ARUNDEL COUNTY; FRANCIS J.
ZYLWITIS, Individually and as
Criminal Justice Coordinator for
Anne Arundel County,
Defendants.

MARK GILLEN; JOHN MORAN,
Plaintiffs-Appellees,

v.

FRANCIS J. ZYLWITIS, Individually
and as Criminal Justice Coordinator
for Anne Arundel County,

Defendant-Appellant,

No. 94-2655

and

ANNE ARUNDEL COUNTY; WILLIAM R.
HUGGINS, Individually and as Sheriff
of Anne Arundel County,
Defendants.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-92-3525-WN)

Argued: September 27, 1995

Decided: October 23, 1997

Before RUSSELL, ERVIN, and HAMILTON, Circuit Judges.

_____

Reversed and remanded by unpublished opinion. Judge Ervin wrote
the opinion, in which Judge Russell and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Stuart Milton Nathan, Assistant Attorney General,
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL
SERVICES, Baltimore, Maryland, for Appellant Huggins; John Fran-
cis Breads, Jr., Assistant County Attorney, Annapolis, Maryland, for
Appellant Zylwitis. Alan Hilliard Legum, ALAN HILLIARD
LEGUM, P.A., Annapolis, Maryland, for Appellees. **ON BRIEF:** J.
Joseph Curran, Jr., Attorney General of Maryland, DEPARTMENT
OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, Balti-
more, Maryland, for Appellant Huggins; Phillip F. Scheibe, County
Attorney, Annapolis, Maryland, for Appellant Zylwitis.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

William Huggins and Francis Zylwitis appeal the district court's denial of their motion for summary judgment in a suit brought by former sheriff's deputies Mark Gillen and John Moran. Finding that the defendants' alleged actions could not have violated clearly established law at the time of these events, we reverse and direct the entry of summary judgment in favor of the defendants.

I.

Appellees Mark Gillen and John Moran worked as deputy sheriffs under the direction of Anne Arundel County Sheriff William R. Huggins from 1985 until 1988, and then continued working as prisoner transport officers until 1990. They allege that Huggins and Francis Zylwitis, head of the county's Office of Criminal Justice and Corrections, were involved in a conspiracy to terminate them from county employment. The alleged conspiracy involved transferring appellees' positions back and forth between departments so that Huggins could ultimately deny approval for their return to the Sheriff's Department. This conspiracy was allegedly undertaken in retaliation for appellees' exercise of several constitutional rights.

Appellees sought recovery against Huggins, Zylwitis, and Anne Arundel County under 42 U.S.C. §§ 1983 and 1985, 42 U.S.C. § 2000e-2 (Title VII), 18 U.S.C. § 245, and the common law tort of abusive discharge; appellants sought dismissal or summary judgment on all counts. On April 29, 1993, the district court dismissed all claims against Anne Arundel County; all claims against Zylwitis and Huggins brought under 42 U.S.C. § 1985, Title VII, and 18 U.S.C. § 245; and Moran's abusive discharge claim against Zylwitis and Huggins. Appellants again moved for summary judgment on the remaining § 1983 claim and the pendent state claim on the basis of qualified immunity. They now appeal the district court's November 8, 1994, denial of that motion.

II.

Qualified immunity protects government officials from suits for civil damages arising out of the exercise of their discretionary func-

tions. Harlow v. Fitzgerald, 457 U.S. 800, 817 (1981). The doctrine applies when the conduct of government employees"does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818.

As the jurisdictional basis for this appeal, appellants cite Mitchell v. Forsyth, in which the Supreme Court held that"a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable `final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." 472 U.S. 511, 530 (1985), cited in Turner v. Dammon, 848 F.2d 440, 443 (4th Cir. 1988).

After this appeal had been filed and briefed, the Supreme Court limited the availability of interlocutory appeals based on denials of summary judgment when qualified immunity is at issue. In June 1995 the Court decided Johnson v. Jones, in which it held that defendants asserting a qualified immunity defense could not immediately appeal a district court's denial of summary judgment when that order "resolved a fact-related dispute about the pretrial record, namely whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." 132 L. Ed. 2d 238, 243 (1995). The plaintiff in Johnson asserted a § 1983 claim against several police officers, claiming that they had used excessive force in his arrest. Id. The district court denied some of the officers' claims for summary judgment, finding sufficient circumstantial evidence to support the plaintiff's theory. Id. The officers appealed before trial and the Seventh Circuit held that it lacked jurisdiction to consider the question of evidentiary sufficiency. Id. The Supreme Court affirmed, holding that "the District Court's determination that the summary judgment record in this case raised a genuine issue of fact concerning petitioners' involvement in the alleged beating of respondent was not a`final decision' within the meaning of the relevant statute." Id. at 246-47. The Court distinguished the Mitchell opinion as limited to cases in which the denial of summary judgment is based only on "the purely legal issue what law was `clearly established.'" Id . at 247.

We held this appeal in abeyance pending the decision in this court's en banc consideration of Winfield v. Bass, 106 F.3d 525 (4th Cir. 1997) (en banc), which involved an interpretation of the Court's

4

decision in Johnson.**1** InWinfield, the district court denied defendants' motion for summary judgment based on qualified immunity. The defendants immediately appealed, challenging both whether the evidence was sufficient to support the factual allegations and whether "the undisputed facts disclose[d] that reasonable officers would have understood that their conduct violated [plaintiff]'s clearly established legal rights." Winfield, 106 F.3d at 530. This court rejected the first argument as a proper basis for jurisdiction and relied instead on the second. "[W]e possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's version of the events actually occurred, but we have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them." Id.

Like the district court in Winfield, the district court in this case has found that genuine issues of material fact are at issue. Were this factual finding the appellants' sole ground of contention, we would have no jurisdiction to consider it as a final decision under 28 U.S.C.A. § 1291 (West 1993). But even assuming that the resolution of those disputed facts favors the appellants, the appellees' alleged conduct must nonetheless have violated clearly established statutory or constitutional rights of which a reasonable person would have known. The district court's denial of appellants' motion for summary judgment necessarily indicates the court's ruling that a reasonable trier of fact, assessing the undisputed facts and construing disputed facts in favor of the non-movant, could find that the appellants violated a right of which a reasonable person would have known. See Winfield, 106 F.3d at 530. Our consideration of that ruling provides the jurisdictional basis for this appeal.

III.

Summary judgment is appropriate when there is no genuine issue of material fact and it appears that the moving party is entitled to judgment as a matter of law. FED. R. C IV. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). On summary judgment, all evidence must be viewed in the light most favorable to the party

_____

**1** The order holding this case in abeyance was entered on February 23, 1996. Winfield v. Bass was decided on January 31, 1997.

opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgments are reviewed de novo on appeal. Higgins v. E.I. DuPont De Nemours & Co., 863 F.2d 1162, 1166-67 (4th Cir. 1988); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir. 1987).

Appellees' complaint charges that appellants deprived them of their rights to "freedom of speech and press, vote or run for office, right to County employment, property right in employment and participate in [sic] or enjoy any benefit or service provided by the Federal or State government and further denied to Plaintiffs their right to substantive and procedural due process." Neither the complaint nor the brief explicitly connects any of these alleged violations with specific factual allegations, but the gist of the claim seems to be that appellants wanted to get rid of appellees because, first, Gillen announced his candidacy for sheriff; second, both appellees had some involvement in some union activities; and third, both spoke to reporters despite Sheriff Huggins's warning not to do so.

Appellees' complaint apparently is essentially one of retaliatory discharge. The Fourth Circuit has explained this claim and its elements as follows:

> [A] state government entity may not deprive a person of valuable employment benefits in retaliation for that person's exercise of his first amendment rights. Plaintiffs asserting such first amendment retaliatory discharge, or whistle-blower, claims must establish three elements to state a claim under Section 1983: (1) "that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern," . . . (2) "that the alleged retaliatory action deprived him of some valuable benefit," . . . and (3) that there was a causal relationship between the protected expression and the retaliatory action.

Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir. 1993) (citations omitted). The initial burden of production with regard to the causation requirement falls on the plaintiff, who must present evidence that his protected expression was a "substantial" or "motivating" factor in his termination. Id. Upon a successful showing by the plaintiff, the bur-

6

den of production shifts to the defendant, who must present evidence that the termination decision would have been made even in the absence of the protected expression, i.e., the constitutionally protected behavior was not a "but for" cause. Id.[2]

Taking the evidence in the light most favorable to appellees, we shall assume that appellees were terminated by appellants.[3] To make

_____

[2] In the Wagner case, the plaintiff alleged that he had been terminated from his state job in retaliation for reporting environmental violations to Maryland's environmental officials. Id. at 88-89. The Fourth Circuit overturned the District Court's denial of summary judgment for the defendant, finding that the plaintiff had "failed to muster any real evidence that the ostensibly legitimate reasons given for his termination were pretextual." Id. at 90-91. Alternatively, the court held that even if the plaintiff had carried this burden, the defendant also carried his burden of showing that the protected speech was not the but-for cause of the plaintiff's termination; the court noted that the plaintiff "was not terminated simply through the actions or at the whim of[the defendant] alone," as the plaintiff had also received two different reviews of the termination decision. Id. at 91-92.

[3] Two key facts underlying this assumption are far from clear. First, appellants may not have had the power to terminate appellees. In Anne Arundel County, a county employee may only be discharged "by the appointing authority," and for specific causes. Joint Appendix at 19 (citing Anne Arundel County Code § 808). Although each appellee lists Zylwitis as one of his two appointing authorities while he worked as a Prisoner Transport Officer in the Police Department, neither produces any evidence that this is true. Each appellee acknowledged in his deposition that Richard Barker was listed as appointing authority on the "personnel action authorization" terminating his position. Further, Zylwitis, whose job as Criminal Justice and Corrections Officer included coordinating the public safety departments for the County's Chief Executive, testified that he was not the appointing authority for appellees and did not have authority to terminate their employment. At the time they were discharged, appellees were not part of the Sheriff's Department, so Huggins was clearly not their appointing authority.

Second, it is not clear that appellants were terminated; their positions simply may have been abolished for budgetary reasons. Zylwitis testified that the decision to privatize the prisoner transportation function that led to appellees' loss of their jobs came not from him, but from the budget

7

out a claim of retaliatory discharge, appellees must show that they were terminated because of their constitutionally protected conduct. There has been no showing that appellants took any action in retaliation for the exercise of constitutional rights. One alleged basis for the retaliatory discharge was Gillen's candidacy for sheriff. When asked what facts he was aware of in support of this allegation, Gillen simply said,

> I believe Huggins dismissal of me was directly in relation to my campaign effort against his position. Thereby by him removing my financial means of support, he was directly not allowing me to utilize my monies to use the press and papers and freedom of speech against his office and his position. (emphasis added)

However, Gillen's subjective belief and the fact that he lost income are insufficient to create a genuine issue of material fact as to any improper motivation on Huggins's part. Gillen also admitted that the earliest point at which he could prove Sheriff Huggins's knowledge of his candidacy was when he filed for office in February 1990, well after appellees were transferred from the Sheriff's department.

A second constitutional right allegedly at issue is appellees' involvement in union activities. In Moran's deposition, he explained that he and Gillen were "key" in drafting the contract between the union and the county, and he "drafted letters to delegates concerning problems at the sheriff's department." He does not allege any friction in the contract negotiations, nor any generalized discord between the union and Sheriff Huggins. His claim that his drafting of letters played some role in his discharge is vague as well, since it is not clear whether the letters generated any response, or whether Huggins even knew about them.

_____

process. Once the privatization decision was made and the positions were to be transferred back to the Sheriff's Department, Huggins decided to fill the positions through the competitive process rather than automatically accepting appellees for the jobs. For appellees to prevail, these budgetary considerations would have to be shown to be pretext for the termination decision.

8

The third basis upon which appellees claim retaliatory discharge is freedom of speech and/or press. Moran testified in his deposition that he "was interviewed by several newspapers in which [he] expressed [his] opinions on how the sheriff's department was run," and was disciplined. Moran does not allege that his speech was constitutionally protected and he did no more than claim that he was punished after this speech without a showing of any causal relationship. Gillen testified that "Huggins has warned us many times when we were in his employment down there that he didn't want us going to the press with anything about the office or his abilities to manage it." Gillen could not provide further specifics, and he did not even allege that he in fact spoke with the press or that Huggins knew or believed that he had. Thus, again there is no showing of any causal connection between this conduct and the discharge.

As evidence of appellants' alleged engineering of appellees' discharge, appellees' brief cites only their own depositions. For instance, appellees cite the Moran deposition as "[a]cknowledging a dislike of Moran and Gillen by Defendants"; "[s]tating that Moran and Gillen were involved in drafting letters to delegates concerning problems with the Sheriffs' [sic] Office on behalf of the Union"; and "[i]dentifying `political motivation' as the reason for Plaintiffs' discharge." Appellees cite Gillen's deposition to show that "Sheriff Huggins sought termination of Plaintiffs in order to financially starve Gillen's campaign for Sheriff." Appellees, in addition to failing to provide any evidence of appellants' alleged motivations other than their own (appellees') "beliefs" and speculation, also fail to show that these motivations were "substantial" or "motivating" factors in the decision to terminate them. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion.").

Even assuming arguendo that an alleged conspiracy to terminate appellees grew out of retaliation for appellees' constitutionally protected activities, appellants have shown a lack of causation. Moran did not apply for the sheriff's deputy job and Gillen failed the physical.

The district court declined to grant summary judgment on the basis of the following factual disputes: "which county entity actually

9

employed Plaintiffs at the time their positions were eliminated, [and] which county official was actually responsible for the employment decisions at issue in this case." Appellees have failed to produce anything other than speculation that their termination was in retaliation for the exercise of any constitutional rights. Therefore, the district court erred in denying the appellants' motion for summary judgment.

IV.

Maryland courts recognize a cause of action for abusive discharge available to employees who have been fired in contravention of public policy. Adler v. American Standard Corp., 432 A.2d 464, 473 (Md. 1981). The action applies when an "employee has refused to act in an unlawful manner or attempted to perform a statutorily prescribed duty," id., has exercised a statutory right or privilege, or has performed an important public function, Makovi v. Sherwin-Williams Co., 561 A.2d 179, 182 (Md. 1989). A discharge in violation of constitutional rights is an abusive discharge. Leese v. Baltimore County, 497 A.2d 159, 172 (Md. App.), cert. denied, 501 A.2d 845 (Md. 1985).

Assuming, as did the district court, that "a discharge based on candidacy for office violates Maryland public policy," this claim also falters due to Gillen's failure to point to any admissible evidence that his discharge was in fact based on his candidacy for office. The district court erred in declining to grant summary judgment in favor of defendants.

V.

Because the district court erred when it refused to grant summary judgment in favor of William Huggins and Francis Zylwitis in the § 1983 suit brought against them by Mark Gillen and John Moran, we reverse the decision below and direct that summary judgment be entered in favor of defendants.

REVERSED AND REMANDED

10